**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **KRISTINA FINK, on behalf of the Nation Safe Drivers Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>                    **Plaintiff,**<br><br>**v.**<br><br>**WILMINGTON TRUST, N.A., as successor to Wilmington Trust Retirement and Institutional Services Company, MICHAEL SMITH, ANDREW SMITH, and FRANK MENNELLA,**<br><br>                    **Defendants.** | **Case No.** |

## COMPLAINT

Plaintiff Kristina Fink, by her undersigned attorneys, on behalf of the Nation Safe Drivers Employee Stock Ownership Plan, and similarly situated participants in the Plan and their beneficiaries, alleges upon personal knowledge, the investigation of her counsel, and upon information and belief as to all other matters, as to which allegations she believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.      Plaintiff Kristina Fink ("Plaintiff") brings this suit against Wilmington Trust, N.A. as successor to Wilmington Trust Retirement and Institutional Services Company (together, "Wilmington Trust"), the trustee for the Nation Safe Drivers Employee Stock Ownership Plan (the "Plan") when the Plan acquired shares of NSD Holdings, Inc. (including its predecessor, Nation

Safe Drivers Holdings, Inc.) ("NSD") in 2014, and against NSD shareholders Michael Smith, Andrew Smith, and Frank Mennella.

2.      Plaintiff is a participant in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who is vested in shares of NSD allocated to her account in the Plan.

3.      This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by Wilmington Trust when it caused the Plan to buy shares of NSD for more than fair market value in 2014 and other relief.

4.      As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Wilmington Trust's violations of ERISA.

5.      At all relevant times, NSD was a privately-held company and a party in interest to the Plan. On or about September 29, 2014, the Plan purchased 640,000 shares of NSD common stock for $342,000,000, which was financed by a $317,225,000 term note agreement between NSD and the Plan bearing a 2.97% interest rate, and notes financed by the selling shareholders (the "Selling Shareholders") of $24,775,000 that bore a 6.00% interest rate, with the notes to be repaid over a 50 year period (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction"). At that time, NSD became 100% employee owned.

6.      Wilmington Trust represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the Plan's behalf.

7.      The ESOP Transaction allowed the Selling Shareholders to unload their interests in NSD above fair market value and saddle the Plan with hundreds of millions of dollars of debt over

2

a 50-year repayment period to finance the Transaction. Wilmington Trust failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants, including Plaintiff.

8.      Michael Smith, Andrew Smith, and Frank Mennella (the "Selling Shareholder Defendants") are parties in interest who are among the Selling Shareholders who sold shares in the ESOP Transaction. The Selling Shareholder Defendants are liable under ERISA for participating in the prohibited transactions and in Wilmington Trust's breaches of fiduciary duty.

9.      Plaintiff brings this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by her and similarly situated participants, resulting from Wilmington Trust's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA, and breaching its fiduciary duties under ERISA, and the Selling Shareholder Defendants' participation in these violations.

## JURISDICTION AND VENUE

10.      This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to require Wilmington Trust to make good to the Plan losses resulting from its violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against the Selling Shareholder Defendants, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

11.      This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant Wilmington Trust resides or may be found in this District, and because some of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

13.     Plaintiff Kristina Fink is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan effective on August 1, 2014. Plaintiff Fink resides in Boca Raton, Florida. She was a Claims Manager and Senior Special Investigator at NSD. She was employed by NSD from August 2002 to February 2018. She was vested by the Plan's terms in shares of NSD in her Plan account.

14.     Defendant Wilmington Trust is a trust company chartered in Delaware. Its headquarters is at 1100 North Market Street, Wilmington, Delaware 19890. Wilmington Trust is a subsidiary of M&T Bank Corporation. M&T Bank Corporation is headquartered in Buffalo, New York.

15.     Wilmington Trust was the Trustee of the Plan at the time of the ESOP Transaction. Wilmington Trust was a "fiduciary" under ERISA because it was the Trustee. As Trustee, Wilmington Trust had exclusive authority to manage and control the assets of the Plan and had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on the Plan's behalf. Wilmington Trust was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at all times that it was Trustee of the Plan.

16.     Wilmington Trust's power and authority does not include the power and authority to interpret the terms of the written Plan document.

17.     Wilmington Trust was replaced as Trustee of the Plan by GreatBanc Trust Company effective September 30, 2017.

18.     Defendant Michael Smith was a selling shareholder in the ESOP Transaction. Michael Smith was a founder of NSD, and a director, officer and employee of the company.

19.     Defendant Andrew Smith was a selling shareholder of NSD stock in the ESOP Transaction. Andrew Smith was a director, officer and employee of the company.

20.     Defendant Frank Mennella was a selling shareholder of NSD stock in the ESOP Transaction. Frank Mennella was an officer, director, and employee of the company.

21.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Michael Smith, Andrew Smith and Frank Mennella were all 10 percent or more shareholders of NSD at the time of the ESOP Transaction. They were parties in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction.

## FACTUAL ALLEGATIONS

22.     Headquartered in Boca Raton, Florida, NSD, which is also known or operated as Nation Safe Drivers and Nation Motor Club, bills itself as "one of the largest suppliers of auto-related, supplemental products since 1962," whose "marquis product" is "24-hour Dispatched Roadside Assistance." NSD was at all times a private company. There is and was no public market for NSD stock.

23.     Brothers Larry Smith and Michael Smith founded NSD in 1962 and spent 52 years in the business. NSD was a Smith-family owned and operated company to the time of the ESOP Transaction.

24.     The Plan was adopted effective August 1, 2014.

25.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

26.     NSD identified the Plan as intended to be a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of NSD.

27.     The Plan's principal asset was at all times NSD stock.

28.     The Plan is an individual account plan under which a separate individual account was established for each participant.

29.     NSD is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

30.     Employees of NSD and NSD's wholly-owned subsidiary, NSDS Group, Inc., participate in the Plan.

31.     NSD is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

32.     The Plan's Forms 5500 report at Part II Lines 2a & 3a that NSD is the Plan's administrator.

33.     NSD administers the Plan through an ESOP Committee appointed by NSD's Board of Directors.

34.     NSD is and was an ERISA fiduciary to the Plan as its administrator.

35.     NSD is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

36.     NSD appointed Wilmington Trust as Trustee of the Plan. As Trustee, Wilmington Trust had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for NSD stock.

37.     As Trustee for the Plan, it was Wilmington Trust's exclusive duty to ensure that any transactions between the Plan and the Selling Shareholders and between the Plan and NSD, including acquisitions of NSD stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

38.     Wilmington Trust engaged Stout Risius Ross ("Stout") as its valuator in the ESOP Transaction.

39.     Wilmington Trust engaged Holland & Knight LLP as its counsel in the ESOP Transaction.

40.     On or about September 29, 2014, the Plan purchased from the Selling Shareholders 640,000 shares of NSD common stock for $342,000,000.

41.     At that time, NSD became 100% employee owned.

42.     The purchase was financed by a $317,225,000 term note agreement between NSD and the Plan, which bore a 2.97% interest rate and was to be repaid over a 50 year period through September 30, 2064, and by Selling Shareholder-financed notes of $24,775,000 that bore a 6.00% interest rate and were to be repaid over a 50-year period through September 30, 2064.

43.     The Plan's Form 5500 Annual Return/Report for plan year ending September 30, 2014, reports that the Plan had an acquisition indebtedness of $342,000,000.

44.     The Selling Shareholders were the shareholders of NSD stock, most whom were members of the Smith family or entities related to the Smith family. Various trusts and a partnership related to NSD's founders were also shareholders at the time of the ESOP Transaction. At all times prior to the ESOP Transaction, the Smith family had a controlling interest in NSD.

45.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery. The Selling Shareholder Defendants chose to sell to the Plan because they could not find a buyer who would pay as much as the ESOP Transaction purchase price, and founders Michael Smith and Larry Smith wanted out of the business.

46.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. NSD provided financial projections to Wilmington Trust and Stout for the valuation for the ESOP Transaction. The financial projections were unreasonably optimistic, and the Selling Shareholder Defendants knew or should have known that this was the case.

47.     Andrew Smith was NSD's President and CEO at the time of the ESOP Transaction and after the Transaction.

48.     Andrew Smith is the son of NSD founder Michael Smith.

49.     Andrew Smith was a director of NSD at the time of the ESOP Transaction and after the Transaction.

50.     Frank Mennella was an officer, director, and employee of NSD at the time of the ESOP Transaction and after the Transaction.

51.     The Selling Shareholder Defendants were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction, as 10 percent or more shareholders of NSD, directly or indirectly, and/or as directors of NSD or persons with powers or responsibilities similar to directors, and/or as officers of NSD or persons with powers or responsibilities similar to officers, and/or as employees of NSD.

52.     Note 7 to the Financial Statements to the Plan's Forms 5500 Annual Return/Report for plan year ending September 30, 2014, indicates that the Selling Shareholder Defendants and NSD, with whom the Plan transacted, were parties in interest.

53.     The Schedules of Assets to the Plan's Forms 5500 Annual Return/Report for plan years ending September 30, 2014 to September 30, 2017, report that NSD is a party in interest.

54.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan did not receive a discount for lack of control and paid a control premium for NSD even though the Plan did not obtain control over NSD upon its purchase of the Company, as certain Selling Shareholders continued to control the company. After the ESOP Transaction, the Selling Shareholder Defendants retained control of NSD with Andrew Smith, Lauren Smith, and/or other Selling Shareholder Defendants or their appointees or proxies maintaining positions as NSD directors and/or officers. Selling Shareholders who held warrants had rights to designate members of the NSD board of directors. Application of a control premium was an incorrect valuation methodology. The Plan therefore overpaid for NSD stock.

55.     Lauren Smith was NSD's Treasurer and Secretary, and its Director of Compliance and Licensing at the time of the ESOP Transaction and after the Transaction.

56.     Lauren Smith is the sister of Andrew Smith and daughter of Michael Smith.

57.     Michael Mennella was NSD's Vice President and National Sales Manager at the time of the ESOP Transaction and after the Transaction.

58.     Michael Mennella is the brother of Frank Mennella.

59.     Nearly three years after the ESOP Transaction, NSD still represented itself on its website as "family owned and operated."

60.     As Trustee, Wilmington Trust is liable for causing the Plan to pay more than fair market value for NSD stock as a result of the failure to receive a discount for lack of control, the

payment of a control premium where previous owners retained control of NSD, and/or other factors in Wilmington Trust's decision to purchase NSD stock for the Plan the ESOP Transaction.

61.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Wilmington Trust did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. Wilmington Trust's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for NSD stock in the ESOP Transaction due to Wilmington Trust's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate guideline public companies for comparison, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered the valuation of NSD stock in the ESOP Transaction faulty.

62.     The U.S. District Court for the Eastern District of Virginia decided a case with the same defendant (Wilmington Trust); same valuator (Stout); same kind of transaction (a leveraged ESOP transaction); and same lousy outcome for participants. *See Brundle v. Wilmington Trust N.A.*, 241 F. Supp. 3d 610 (E.D. Va. 2017), *aff'd*, No. 17-1873, 2019 WL 1287632 (4th Cir. Mar. 22, 2019). The *Brundle* court found that Wilmington Trust has a "tendency to rubber stamp whatever Constellis [the plan's sponsor] and SRR [valuator Stout Risius Ross] put in front of it." *Id.* at 642. As Wilmington Trust's Assistant Vice President and Fiduciary Services Sub-Committee ("FSSC") member Greg Golden testified, Wilmington Trust does a lesser level of due diligence as an ESOP trustee than does a so-called "real world buyer" of a multimillion-dollar company. *Id.* at 637. Following trial, the *Brundle* court ruled that Wilmington Trust caused a prohibited transaction

by failing to ensure that the plan paid no more than adequate consideration for company stock and "damaged the ESOP by agreeing to overpay $29,773,250.00 for the stock." *Id.* at 649. Plaintiff alleges the same thing happened here.

63.     For purposes of the 2014 plan year Form 5500 filing with the U.S. Department of Labor and the Internal Revenue Service, the NSD shares purchased by the Plan in the ESOP Transaction were subsequently re-valued at $28,992,000 as of September 30, 2014. That is, an independent appraiser valued the fair market value of the Plan's NSD stock $313,008,000 lower at the time, or shortly after, the Plan purchased it.

64.     The Plan's Form 5500 Annual Return/Report for plan year ending September 30, 2017, reports that the Plan still had an acquisition indebtedness of $332,178,536 on that date.

65.     Incentives to Wilmington Trust to act in favor of the Selling Shareholders in the ESOP Transaction included the possibility of business from sellers of companies who understood that Wilmington Trust believed a lesser degree of due diligence was needed for ESOP purchases of businesses than for non-ESOP-buyers' purchases of businesses, which Wilmington Trust distinguished as "real world" transactions, and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

66.     Wilmington Trust is liable to the Plan for the difference between the price paid by the Plan and the actual value of NSD shares at the time of the ESOP Transaction.

67.     The Selling Shareholder Defendants are liable to the Plan to repay the difference between the price they received and the actual value of NSD shares at the time of the ESOP Transaction.

68.     Wilmington Trust has received consideration for its own personal account from NSD for its services in the ESOP Transaction in the form of fees, including a discretionary transaction fee of $165,750.00, under a contract made when the Selling Shareholders owned NSD.

69.     NSD employees did not learn about the ESOP Transaction until after it took place. NSD employees were informed of the Plan in approximately 30-minute long meetings held in the Executive Conference Room at NSD, in which Senior Vice President Howard Goldfarb gave a presentation. A longer presentation unveiling the Plan, led by Andrew Smith, took place later at an Embassy Suites hotel.

70.     NSD, at a time that it was owned by the Selling Shareholders, agreed to indemnify Wilmington Trust as Plan Trustee in connection with the ESOP Transaction. The indemnification agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation.

71.     The indemnification agreement does not contain an exemption addressing violation of the *per se* prohibited transaction rules under ERISA § 406.

72.     The indemnification agreement includes an exemption if a court of competent jurisdiction holds that a loss resulted from Wilmington Trust's "gross negligence" or "willful misconduct," or "breach of fiduciary duty under ERISA."

73.     Those carve-outs do not apply to ERISA § 406 claims for "Prohibited Transactions," which are different than ERISA § 404 claims concerning "Fiduciary Duties," and as establishing *per se* statutory violations do not require findings of gross negligence or willful misconduct.

74.     Under similar contractual terms, Wilmington Trust refused to provide reimbursement to a plan sponsor following Wilmington Trust's loss at trial on an ERISA § 406 claim in the *Brundle* case.

75.     The indemnification agreement is invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because Wilmington Trust violated its ERISA duties to the Plan, and its legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

76.     Payment by NSD of millions of dollars of attorneys' fees, costs and litigation expenses to Wilmington Trust necessarily would adversely impact NSD's equity value and therefore the value of Plan assets. Direct payment or reimbursement of Wilmington Trust's defense costs by NSD, or the Plan that owns it, would adversely affect the Plan and Plaintiff's and other participants' financial interests.

77.     Advancing of millions of dollars in attorneys' fees, costs and litigation expenses to Wilmington Trust necessarily would adversely impact NSD's equity value and therefore the value of Plan assets even if Wilmington Trust is eventually ordered to reimburse NSD. The indemnification agreement does not require payment of interest or otherwise account for the time value of money.

## CLAIMS FOR RELIEF

## COUNT I

### Causing and Engaging in Prohibited Transactions Forbidden by ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against Wilmington Trust

78.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

79.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Wilmington Trust, from causing a plan, here the Plan, to engage in a sale or exchange of any

property, here NSD stock, with a party in interest, here the Selling Shareholder Defendants including Michael Smith, Andrew Smith, and Frank Mennella, as took place in the ESOP Transaction.

80.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits Wilmington Trust from causing the Plan to borrow money from a party in interest, here NSD and the Selling Shareholder Defendants including Michael Smith, Andrew Smith, and Frank Mennella, as took place in the ESOP Transaction.

81.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits Wilmington Trust from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Selling Shareholder Defendants including Michael Smith, Andrew Smith, and Frank Mennella, of any assets of the ESOP, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for NSD stock and in continuing payments on the loan.

82.     The stock and loan transactions between the Plan and the parties in interest were authorized by Wilmington Trust in its capacity as Trustee for the Plan.

83.     Wilmington Trust caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

84.     ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

85.     Wilmington Trust caused the Plan to acquire NSD stock from the Selling Shareholders above fair market value and with the proceeds of loans that were used to pay the Selling Shareholders. This primarily benefited the Selling Shareholders to the substantial detriment of the Plan and its participants and beneficiaries, even though Wilmington Trust was required to act solely in the interests of the Plan's participants and beneficiaries in connection with any such transaction.

86.     Wilmington Trust received consideration for its own personal account from NSD—fees and an indemnification agreement—as Trustee for the Plan in the ESOP Transaction, in violation of ERISA § 406(b)(3).

87.     Wilmington Trust caused and engaged in prohibited transactions in violation of ERISA § 406(b) in the ESOP Transaction.

88.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

89.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

90.     Wilmington Trust has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

**Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Wilmington Trust**

91.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

92.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

93.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

94.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

95.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

96.     Wilmington Trust was required to undertake an appropriate and independent investigation of the fair market value of NSD stock in 2014 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the NSD stock purchased by the Plan.

97.     Wilmington Trust breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

98.     Wilmington Trust has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

## COUNT III

### Violation of ERISA §§ 410 and 404(a)(1)(A), (B), 29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against Wilmington Trust

99.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

100.    ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve Wilmington Trust, a Plan fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable to the Count I claim here.

101.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

17

102.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

103.    The indemnification agreement purports to provide payment or reimbursement for the benefit of Wilmington Trust for its losses, costs, expenses or other damages, including but not limited to attorney's fees.

104.    To the extent that the indemnification agreement attempts to relieve Wilmington Trust of its responsibility or liability to discharge its duties under ERISA, or attempts to have NSD (a Plan-owned company) and thereby the Plan be responsible for Wilmington Trust's liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

105.    To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

106.    As a result of the foregoing, should it be held liable under the preceding Count I or Count II, Wilmington Trust should be ordered to disgorge any indemnification payments made by NSD and/or the Plan, plus interest.

## COUNT IV

**Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3), Against Michael Smith, Andrew Smith and Frank Mennella**

107.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

108.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

109.    The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

110.    As a result of the prohibited transactions described above, the Selling Shareholder Defendants including Michael Smith, Andrew Smith, and Frank Mennella received Plan assets in payments above fair market value for their NSD stock.

111.    The Selling Shareholder Defendants were all parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

112.    The Selling Shareholder Defendants knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their NSD stock in the ESOP Transaction, (3) that Wilmington Trust was a fiduciary to the Plan, (4) that the ESOP Transaction was for above fair market value, (5) that Wilmington Trust caused the Plan to engage in transactions prohibited under ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b), (6) that Wilmington Trust breached its fiduciary duties under ERISA, and (7) that the true purpose of the ESOP Transaction was to benefit the Selling Shareholders.

113.     As officers and directors of NSD and as Selling Shareholders, Defendants Michael

Smith, Andrew Smith, and Frank Mennella were aware of sufficient facts that the ESOP

Transaction constituted a prohibited transaction with parties in interest. As parties in interest, the

Selling Shareholder Defendants are liable for violations of ERISA § 406(a)(1)(A) and (D), 29

U.S.C. § 1106(a)(1)(A) and (D).

114.     The Selling Shareholder Defendants have profited from the prohibited transactions

in an amount to be proven at trial, and upon information and belief, they remain in possession of

some or all of the assets that belong to the Plan.

115.      The Selling Shareholder Defendants are subject to appropriate equitable relief

including disgorgement of any profits, accounting for profits, surcharge, having a constructive

trust placed on any proceeds received (or which are traceable thereto), having the transactions

rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to

other appropriate equitable relief.

## CLASS ACTION ALLEGATIONS

116.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and

(b), on behalf of the following class:

> All participants in the Nation Safe Drivers Employee Stock
> Ownership Plan and the beneficiaries of such participants. Excluded
> from the Class are the shareholders who sold the stock of NSD
> Holdings, Inc. or its predecessor ("NSD") to the Plan in September
> 2014, and their immediate families; the directors of NSD and their
> immediate families; and legal representatives, successors, and
> assigns of any such excluded persons.

117.     The Class is so numerous that joinder of all members is impracticable. Although

the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's

most recent Form 5500 filing reports that as of September 30, 2017, there were 148 participants in the Plan.

118.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

      i.   Whether Wilmington Trust served as Trustee in the Plan's acquisition of NSD stock;

     ii.   Whether Wilmington Trust was an ERISA fiduciary of the Plan;

    iii.   Whether Wilmington Trust caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase NSD stock and take loans from parties in interest;

    iv.   Whether Wilmington Trust engaged in a good faith valuation of the NSD stock in connection with the ESOP Transaction;

     v.   Whether Wilmington Trust caused the Plan to pay more than fair market value for NSD stock;

    vi.   Whether Wilmington Trust engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

   vii.   Whether Wilmington Trust engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

  viii.   Whether the Selling Shareholder Defendants were parties in interest;

    ix.   Whether Wilmington Trust breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of NSD stock in 2014;

    x.   Whether Michael Smith, Andrew Smith, and Frank Mennella, as parties in interest, participated in the prohibited transactions;

    xi.   The amount of losses suffered by the Plan and its participants as a result of Wilmington Trust's and the Selling Shareholder Defendants' ERISA violations; and

    xii.   The appropriate relief for Wilmington Trust's and the Selling Shareholder Defendants' violations of ERISA.

119.   Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of her Plan account because the Plan paid above fair market value and took on excessive loans for NSD stock, resulting in her being allocated fewer shares of stock, and she continues to suffer such losses in the present because Wilmington Trust failed to correct the overpayment by the Plan.

120.   Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

121.   Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Wilmington Trust, and/or because

adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

122.    In the alternative, class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Wilmington Trust has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Wilmington Trust's violations of ERISA.

123.    The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A.      Declare that Defendant Wilmington Trust caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B.      Declare that Defendants Michael Smith, Andrew Smith, and Frank Mennella engaged in a prohibited transaction with the Plan in violation of ERISA;

C.      Declare that Defendant Wilmington Trust breached its fiduciary duties under ERISA to the Plan and the class members;

D.      Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan and/or to any successor trust(s) the losses resulting from the breaches of ERISA and restore any profits it or he has made through use of assets of the Plan;

E.      Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

F.      Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

G.      Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendant Wilmington Trust's breaches of ERISA;

H.      Declare that the indemnification agreement between Defendant Wilmington Trust and NSD violates ERISA § 410, 29 U.S.C. § 1110;

I.      Order Defendant Wilmington Trust to reimburse NSD for any money paid by NSD or its subsidiary under any indemnification agreement between Wilmington Trust and NSD, plus interest;

J.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

K.      Order Defendant Wilmington Trust to disgorge any fees it received in conjunction with its services as Trustee for the Plan in the ESOP Transaction as well as any earnings and profits thereon;

L.      Order Defendants to pay prejudgment and post-judgment interest;

M.     Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named

Plaintiff as class representative and her counsel as class counsel; and

N.     Award such other and further relief as the Court deems equitable and just.

Dated:    June 25, 2019

**BAILEY & GLASSER LLP**

Gregory Y. Porter (*pro hac vice* to be filed)
Ryan T. Jenny (*pro hac vice* to be filed)
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

**FEINBERG, JACKSON,
WORTHMAN & WASOW LLP**

Daniel Feinberg (*pro hac vice* to be filed)
Todd Jackson (*pro hac vice* to be filed)
2030 Addison Street, Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Facsimile: (510) 269-7994
dan@feinbergjackson.com
todd@feinbergjackson.com

**BAILEY & GLASSER LLP**

By:  */s/ David A. Felice*
David A. Felice (#4090)
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, DE  19808
Telephone: (302) 504-6333
Facsimile: (302) 504-6334
dfelice@baileyglasser.com

*Attorneys for Plaintiff*