IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KRISTINA FINK, on behalf of the Nation Safe Drivers Employee Stock Ownership Plan, and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST, N.A., as successor to Wilmington Trust Retirement and Institutional Services Company, MICHAEL SMITH, ANDREW SMITH, and FRANK MENNELLA<br><br>Defendants. | Civil Action No. 19-1193-CFC |

David A. Felice, BAILEY & GLASSER, LLP, Wilmington, Delaware

   *Counsel for Plaintiff*

Ashley R. Altschuler and Ethan H. Townsend, MCDERMOTT WILL & EMERY LLP, Wilmington, Delaware; Theodore M. Becher, MCDERMOTT WILL & EMERY LLP, Chicago, Illinois; Allison S. Crowe, MCDERMOTT WILL & EMERY LLP, New York, New York

   *Counsel for Defendant*

**MEMORANDUM OPINION**

July 21, 2020
Wilmington, Delaware

*[signature]*
COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff Kristina Fink filed this putative class action against Defendants Michael Smith, Andrew Smith, and Frank Mennella (collectively, the Individual Defendants) and Wilmington Trust, N.A. D.I. 1. All four claims for relief alleged in the Complaint are brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* The Individual Defendants have moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or in the alternative to transfer venue to the U.S. District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404. D.I. 12. Wilmington Trust consents to transfer. D.I. 12-1 at 1. Plaintiff Kristina Fink opposes both the motion to dismiss and the alternative motion to transfer venue. *See* D.I. 18.

I. **BACKGROUND**[1]

Headquartered in Boca Raton, Florida, NSD Holdings, Inc., which does business as Nation Safe Drivers (NSD), bills itself as "one of the largest suppliers

---

[1] A District Court is not required to hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, and "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). The parties have not requested a hearing on this motion. All that is before me are the parties' papers pertaining to

of auto-related, supplemental products" whose marquis product is "24-hour Dispatched Roadside Assistance." D.I. 1 ¶ 22. Founded by brothers Larry and Michael Smith, NSD is a private company. D.I. 1 ¶ 23. There is no public market for NSD stock and there never has been. D.I. 1 ¶ 22.

The Nation Safe Drivers Employee Stock Ownership Plan (the Plan) was adopted in 2014. D.I. 1 ¶ 24. Sponsored by NSD, the Plan is a pension plan with individual accounts for NSD employee-participants. D.I. 1 ¶¶ 25–29.[2] The Plan was designed to invest in NSD stock, D.I. 1 ¶ 26, and in September 2014 the Plan purchased 640,000 shares of NSD common stock from the selling shareholders (a group that included the Individual Defendants) for $342,000,000. D.I. 1 ¶¶ 40–41. At that time, NSD became 100% employee owned. D.I. 1 ¶ 41. The purchase was financed by a $317,225,000, 50-year, 2.97% interest note between NSD and the Plan and a $24,775,000, 50-year, 6.00% interest note between the plan and the selling shareholders. D.I. 1 ¶ 42. The Plan's Form 5500 Annual Return/Report for plan year ending September 30, 2014 reported that the Plan had an acquisition indebtedness of $342,000,000—the total purchase price of the NSD stock. D.I. 1 ¶ 43.

---

this motion and the Complaint. Accordingly, all the facts herein are drawn from the Complaint and are assumed to be true for the purpose of this motion.

[2] Employees of NSD's wholly owned subsidiary NSDS Group, Inc. also participate in the plan. D.I. 1 ¶ 30.

Wilmington Trust was trustee of the Plan at the time of the stock purchase and had "sole and exclusive authority to negotiate and approve the [stock purchase] on behalf of the Plan, including the price the Plan paid for NSD stock." D.I. 1 ¶ 36.[3] Prior to the stock purchase, Wilmington Trust engaged Stout Risius Ross as its valuator in the stock purchase. D.I. 1 ¶ 38. Wilmington Trust also engaged Holland & Knight LLP as counsel for the stock purchase. D.I. 1 ¶ 39.

Plaintiff Kristina Fink was an employee of NSD from 2002 to 2018. D.I. 1 ¶ 13. As an employee, she had an individual account in the Plan at the time the Plan purchased NSD. She alleges in the Complaint that the Plan substantially overpaid for NSD. In her words: "an independent appraiser valued the fair market value of the Plan's NSD stock $313,008,000 lower [than the purchase price] at the time, or shortly after, the Plan purchased it." D.I. 1 ¶ 63.

Fink further alleges in her Complaint that Wilmington Trust failed to meet all the obligations ERISA requires of fiduciaries when it approved this transaction. Fink also alleges the Individual Defendants are liable to the Plan as selling shareholders, because various transactions involved in the sale of NSD stock to the plan were prohibited by ERISA.

---

[3] Defendant Wilmington Trust, N.A. is the successor-in-interest to Wilmington Trust Retirement and Institutional Services Company. D.I. 1 ¶ 1. For simplicity's sake I will use "Wilmington Trust" to refer to both entities.

3

## II. THE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

A court's ability to exercise personal jurisdiction over a defendant is limited by the Due Process clauses of the Fourteenth Amendment and the Fifth Amendment. In state court, the Due Process clause of the Fourteenth Amendment applies. *See Bristol-Myers Squibb Co. v. Super. Ct. Cal., San Francisco Cty.*, 137 S.Ct. 1773, 1779 (2017). In federal court, the Due Process clause of the Fifth Amendment applies. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 103–104 (1987); *see also Bristol-Myers Squibb*, 137 S.Ct. at 1784.

There are two kinds of personal jurisdiction: general jurisdiction, which allows a court "to hear any and all claims against" a defendant, *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quotation marks and citation omitted); and specific jurisdiction, which only allows a court to hear claims "deriving from, or connected with, the very controversy that establishes jurisdiction[,]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation marks and citation omitted).

Fink has not argued that this court has general jurisdiction over the Individual Defendants. Thus, the Court only has personal jurisdiction if it has specific jurisdiction.

For a court to have specific jurisdiction, "the Due Process Clause of the Fifth Amendment requires (1) that the defendant have constitutionally sufficient

4

minimum contacts with the forum[] and (2) that subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003).

A minimum contact is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Super. Ct. Cal., Solano Cty.*, 480 U.S. 102, 109 (1987) (quotation marks and citation omitted). The Third Circuit has held that when "Congress has spoken by authorizing nationwide service of process . . . the jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002). Instead, the "federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts[,]" i.e., its contacts with the United States as a whole, "when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." *Id. Pinker* used this national-contacts test for claims that arose under the Securities Exchange Act. *See id.* Two years later, the Third Circuit, quoting *Pinker*, used the same national-contacts test in *In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (2004) for claims that arose in federal antitrust litigation. *See* 358 F.3d 288, 298. Since the Individual Defendants filed the pending motion, the Third Circuit decided *Laurel Gardens, LLC v. Mckenna*, 948

5

F.3d 105 (3d Cir. 2020), a civil RICO case in which the Third Circuit reaffirmed that where Congress has authorized nationwide service of process courts should "consider contacts with the nation as a whole." 948 F.3d 105, 122 (citing *In re Automotive*, 358 F.3d at 297-99; *Pinker*, 292 F.3d at 368-71). From these three cases, I conclude the national-contacts test is trans-substantive and applies whenever a statute authorizes nationwide service of process.

The Individual Defendants argue that *Pinker* and *In re Automotive* apply only to foreign defendants. But in adopting the national-contacts test in *Pinker*, the Third Circuit cited a string of precedents from other circuits that applied the national-contacts test to American defendants. *See Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320 (6th Cir. 1993); *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985), *rev'd on other grounds Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258 (1992). And in *Laurel Gardens*, the Third Circuit applied the national-contacts test to American defendants and held that minimum contacts were established because the defendants were Delaware residents and a Delaware limited liability company with a principal place of business in Newark, Delaware. *See Laurel Gardens*, 948 F.3d at 122. Thus, the national-contacts test applies to both foreign and domestic defendants.

6

It is undisputed that ERISA provides nationwide services of process. *See* 29 U.S.C. § 1132(e)(2). It is also undisputed that all the Individual Defendants reside in the United States and do business in the United States. I find, therefore, under *Pinker*, *In re Automotive*, and *Laurel Gardens*, that the Individual Defendants have sufficient minimum contacts with the United States for this Court to exercise personal jurisdiction over them.

I further hold that the Individual Defendants have failed to show that subjecting them to this Court's jurisdiction does not comport with traditional notions of fair play and substantial justice. Indeed, the Individual Defendants do not even argue in their opening brief that subjecting them to the court's jurisdiction would be unfair. *See* D.I. 12-1. The Individual Defendants do argue unfairness in their reply brief. *See* D.I. 22 at 5–7. Half of that argument duplicates Individual Defendants' argument that there are not minimum contacts with Delaware. The other half states that Fink's decision to sue in Delaware is "forum shopping" the Court should not reward. *See* D.I. 22 at 7.

Fink denies this "forum shopping" allegation. D.I. 18 at 13. But even assuming Fink engaged in forum shopping, that does not change the analysis. Lawyers make tactical choices all the time in litigation—that is what they are paid to do. To the extent one could argue that such tactical litigation is unfair, the Individual Defendants have committed the same sin by filing the present motion.

As described more fully below, there is no compelling reason to litigate this case in the Southern District of Florida, but the Individual Defendants ask me to transfer the case to the Southern District because they would like to litigate in a forum they believe will be more suitable to their case. Thus, the Individual Defendants are just as guilty of "forum shopping" as Fink is, and their forum-shopping argument is at best a wash. Without more, it is not unfair to deny the Individual Defendants their preference to litigate this case in the Southern District of Florida.

Because the Individuals Defendants have sufficient contacts with the relevant forum, the United States, and because exercising personal jurisdiction would comport with fair play and substantial justice, I will deny the Individual Defendants' motion to dismiss for lack of personal jurisdiction.

## III. THE MOTION TO TRANSFER

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It is undisputed that this action could have been brought in the Southern District of Florida where Fink and the Individual Defendants reside. Thus, the only issue before me is whether I should exercise my discretion under § 1404(a) to transfer the case to the Southern District of Florida.

8

As the movants, the Individual Defendants have the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy: "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant[s], the plaintiff's choice of forum should prevail." *Id.* (internal quotation marks and citation omitted).

Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the Third Circuit in *Jumara* identified 12 interests "protected by the language of § 1404(a)" to be weighed in deciding whether to transfer a case. *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The other six interests are public:

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the

> familiarity of the trial judge with the applicable state law
> in diversity cases.

*Id.* at 879–80 (citations omitted). As the parties have not identified relevant factors beyond these 12 interests, I will balance the *Jumara* factors in deciding whether to exercise the discretion afforded me by § 1404(a).

### A. PLAINTIFF'S FORUM PREFERENCE

This factor clearly weighs against transfer. The parties agree on that much. They disagree, however, about the amount of weight I should give this factor in conducting the balancing of interests called for by *Jumara*. The Individual Defendants argue that Fink's forum choice deserves "little weight." D.I. 12-1 at 14. Fink contends that I should give her forum choice "[p]aramount [c]onsideration[.]" D.I. 18 at 12.

In *Shutte*, the Third Circuit held that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" brought pursuant to § 1404(a), and that this choice "should not be lightly disturbed." 431 F.2d at 25 (internal quotation marks and citation omitted). The parties have not cited, and I am not aware of any, Third Circuit or United States Supreme Court case that overruled *Shutte*. *Jumara* cited *Shutte* favorably and reiterated *Shutte*'s admonition that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (internal quotation marks and citation omitted). Thus, I agree with Fink that binding Third Circuit law compels

10

me to treat her forum choice as "a paramount consideration" in the § 1404(a) balancing analysis.

### B. DEFENDANTS' FORUM PREFERENCE

This factor favors transfer.

### C. WHETHER THE CLAIM AROSE ELSEWHERE

This factor has no net affect on the transfer analysis. The claim can be said to arise in either forum. On the one hand, Fink lives in Florida and therefore experienced whatever harms arose from these events in Florida. Additionally, all of Fink's contacts with the Defendants occurred in Florida. On the other hand, Fink alleges that acts relevant to the stock purchase took place in Delaware. Thus, this factor is neutral.

### D. THE CONVENIENCE OF THE PARTIES AS INDICATED BY THEIR RELATIVE PHYSICAL AND FINANCIAL CONDITION

This factor weighs in favor of transfer. The Individual Defendants and Fink are all located in the Southern District of Florida. The only party in Delaware is Wilmington Trust, a large corporation that has consented to transfer and will not be meaningfully inconvenienced by litigating the case in another state.

### E. THE CONVENIENCE OF THE WITNESSES

This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Neither party

11

has argued that a necessary witness will refuse to appear or otherwise be unavailable for trial in either venue.

F. THE LOCATION OF BOOKS AND RECORDS

*Jumara*, instructs me to give weight to the location of books and records only "to the extent that the files [and other documentary evidence] could not be produced in the alternative forum." 55 F.3d at 879. The Individual Defendants do not argue that the documentary evidence in this case could not be produced in the District of Delaware. *See* D.I. 12-1 at 20–21. And Fink does not argue that the documentary evidence in this case could not be produced in the Southern District of Florida. D.I. 18 at 19. Thus, this factor is neutral.

G. ENFORCEABILITY OF THE JUDGMENT

This factor is neutral, as judgments from this District and the Southern District of Florida would be equally enforceable.

H. PRACTICAL CONSIDERATIONS

*Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Plaintiff and all the Individual Defendants reside in the Southern District of Florida. The parties have represented that there are witnesses and documentary evidence in the Southern District of Florida. Thus, this factor weighs in favor of transfer.

### I. RELATIVE ADMINISTRATIVE DIFFICULTY DUE TO COURT CONGESTION

Although both fora are heavily congested, this factor weighs in favor of transfer. The Individual Defendants state in their brief that judges in the Southern District of Florida have 374 pending cases per judge. *See* D.I. 12-1 at 23. Fink does not contest this representation. *See* D.I. 18 at 20. I have a docket of over 550 pending cases. In terms of weighted filings, the District of Delaware has 1,093 per judge compared to the Southern District of Florida's 765 per judge. *See* D.I. 12-7 at 3–4. Thus, the Southern District of Florida would be less burdened by this case and this factor weighs in favor of transfer.

### J. LOCAL INTEREST IN DECIDING LOCAL CONTROVERSIES AT HOME

Both fora have an interest in deciding this case. Several of the parties are in Florida and some of the events took place in Florida. One of the Defendants is in Delaware and some of the events took place in Delaware. Thus, this factor neither weighs for nor against transfer.

### K. PUBLIC POLICIES OF THE FORA AND FAMILARITY OF THE TRIAL JUDGES WITH THE APPLICABLE STATE LAW IN DIVERSITY CASES

The Individual Defendants and Fink concede that neither forum has policies regarding transfer and this case does not involve questions of state law. *See* D.I. 12-1 at 24 *and* D.I. 18 at 22. Therefore, these factors are neutral.

### L. THE *JUMARA* FACTORS DO NOT FAVOR TRANSFER

To sum up, of the 12 *Jumara* factors six are neutral, four weigh in favor of transfer, and one—Plaintiff's forum choice—weighs against transfer. On the whole, recognizing the appropriate weight to be given to each factor and giving paramount consideration to Fink's choice of this forum, I find that the Individual Defendants have failed to demonstrate that the *Jumara* factors weigh strongly in favor of transfer, and, therefore, I will deny the Individual Defendants' motion to transfer.

### IV. CONCLUSION

For the above reasons, I will deny the Individual Defendants' motion to dismiss for lack of personal jurisdiction, or in the alternative, motion to transfer venue.

The Court will enter an order consistent with this Memorandum Opinion.