## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KRISTINA FINK, on behalf of the
Nation Safe Drivers Employee Stock
Ownership Plan, and on behalf of a class
of all other persons similarly situated,

              Plaintiff,

              v.

WILMINGTON TRUST, N.A., as
successor to Wilmington Trust
Retirement and Institutional Services
Company, MICHAEL SMITH, and
FRANK MENNELLA,

              Defendants,
     and

WILMINGTON TRUST, N.A., as
successor to Wilmington Trust
Retirement and Institutional Services
Company,

              Third-Party Plaintiff,
     v.

STOUT RISIUS ROSS, INC. and
STOUT RISIUS ROSS, LLC,

           Third-Party Defendants.

Case No. 19-1193-CFC

## PLAINTIFF'S UNOPPOSED MOTION AND INCORPORATED
## MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF
## SETTLEMENT

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .....................2

    **A.**    Background .........................................................................2

    **B.**    Discovery............................................................................3

    **C.**    Motion Practice .................................................................4

    **D.**    The Parties' Settlement Efforts .......................................4

III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS.....................5

    **A.**    The Proposed Settlement Class .......................................5

    **B.**    Benefits to the Class.........................................................6

    **C.**    Notice and Administration ...............................................7

    **D.**    Service Award to the Class Representative and Attorneys' Fees and Costs ..................................................8

    **E.**    Release of Claims..............................................................9

    **F.**    Notice and Proposed Schedule of Events...........................10

IV.     ARGUMENT.......................................................................11

    **A.**    The Court Should Certify the Settlement Class .................11

        **1.**    The Proposed Settlement Class Meets the Requirements of Rule 23 .......................................12

        **2.**    The Class Satisfies the Requirements of Rule 23(a) ...............12

            **a)**    The Class is sufficiently numerous.................................12

            **b)**    There are common questions of law and fact.................13

            **c)**    The Class Representative is typical of the class.............14

            **d)**    The proposed Class Representative and her counsel have and will fairly and adequately protect the interests of the Class ........................................16

        **3.**    The Requirements for Certification Under Rule 23(b)(1) Are Met ....................................17

            **a)**    Class certification under Rule 23(b)(1)(A) is appropriate .......................................................17

        **b)**     Class certification under Rule 23(b)(1)(B) is appropriate ......................................................................19

**B.**    The Court Should Grant Preliminary Approval of the Settlement Because it is Fair, Reasonable and Adequate......................................20

    **1.**    The Standards for Preliminary Approval....................................20

    **2.**    The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel......22

    **3.**    The Complexity, Expense, and Likely Duration of the Litigation..................................................................................23

    **4.**    The Stage of The Proceedings and the Amount of Discovery  Completed..............................................................25

    **5.**    The Risks of Establishing Liability, Damages and Maintaining the  Class Action Through Trial...........................26

    **6.**    The Ability of the Defendant to Withstand a Greater Judgment ..................................................................................28

    **7.**    The Range of Reasonableness of the Settlement Fund in Light of the  Best Possible Recovery and the Attended Risks of Litigation....................................................................28

    **8.**    The Effectiveness of the Proposed Method of Distributing Relief to  the Class ..................................................................33

    **9.**    The Terms of The Proposed Award of Attorneys' Fees...........34

    **10.**   The Proposal Treats Class Members Equitably Relative to Each  Other..................................................................................34

**C.**    The Court Should Approve the Notice Plan and Schedule a Fairness Hearing..............................................................................35

**V.**    CONCLUSION...............................................................................37

**VI.**   REQUEST AS TO HEARING.......................................................38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alday v. Raytheon Co.*,
 619 F. Supp. 2d 726 (D. Ariz. 2008) ................................................................18

*In re Baby Products Antitrust Litig.*,
 708 F.3d 163 (3d Cir. 2013) .............................................................................35

*Brown on behalf of Henny Penny Corp. Emp. Stock Ownership Plan
 v. Wilmington Tr.*, N.A., No. 3:17-CV-250, 2018 WL 3546186
 (S.D. Ohio July 24, 2018) ....................................................................................3

*Brundle v. Wilmington Trust, N.A.*,
 919 F.3d 763 (4th Cir. 2019) ...............................................................................3

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) .............................................................................27

*Chao v. Hall Holding Co, Inc.*,
 285 F.3d 415 (6th Cir. 2002) ............................................................................30

*In re CIGNA Corp. Sec. Litig.*,
 No. 02–8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ...............................23

*DiFelice v. U.S. Airways, Inc.*,
 235 F.R.D. 70 (E.D. Va. 2006) ..........................................................................19

*Du on behalf of Enteromedics, Inc. v. Blackford*,
 No. 17-CV-194, 2018 WL 4691046 (D. Del. Sept. 28, 2018) ...........................25

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974).........................................................................................36

*Feret v. Corestates Fin. Corp.*,
 C.A. No. 97–6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998).......................17

*Gates v. Rohm & Haas Co.*,
 248 F.R.D. 434 (E.D. Pa. 2008)...................................................................23, 26

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...............................................................27

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ......................................................*passim*

*Guidry v. Wilmington Tr.*,
  333 F.R.D. 324 (D. Del. 2019) ...........................................................3

*Halley v. Honeywell Int'l, Inc.*,
  861 F.3d 481 (3d Cir. 2017) ............................................................20

*Hochstadt v. Boston Sciences Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ................................................31

*Huffman v. Prudential Ins. Co. of Am.*,
  No. 2:10-CV-05135, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ....................22

*In re Ikon Office Solutions, Inc.*,
  191 F.R.D. 457 (E.D. Pa. 2000) .......................................................19

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008) .....................................................17

*Kindle v. Dejana*,
  315 F.R.D. 7 (E.D.N.Y. 2016) .........................................................13

*Knight v. Lavine*,
  No. 12-611, 2013 WL 427880 (E.D. Va. Feb. 4, 2013) .....................................18

*Larson v. AT & T Mobility LLC*,
  687 F.3d 109 (3d Cir. 2012) ............................................................16

*Lively v. Dynegy, Inc.*,
  No. 05-00063, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007)................................15

*Loc. 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc.*,
  No. 15-CV-1019 (JCH), 2018 WL 1419792 (D. Conn. Mar. 21,
  2018) .......................................................................................18

*McDonough v. Toys R Us, Inc.*,
  80 F. Supp. 3d (E.D. Pa. 2015) .......................................................31

*Mehling v. New York Life Ins. Co.*,
    246 F.R.D. 467 (E.D. Pa. 2008) ..................................................................32, 35

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
    No. 08-CV-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ...........................32, 33

*Myers v. Jani-King of Philadelphia, Inc.*,
    No. CV 09-1738, 2019 WL 2077719 (E.D. Pa. May 10, 2019) .........................20

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
    301 F.R.D. 191 (E.D. Pa. 2014) ..................................................................12, 22

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) .................................................................................15

*Neil v. Zell*,
    767 F. Supp. 2d 933 (N.D. Ill., 2011) ..............................................15, 18, 19, 30

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001), *as amended* (Oct. 16, 2001) ................................13

*Nistra v. Reliance Trust Co.*,
    No. 16 C 4773, 2018 WL 835341 (N.D. Ill. Feb. 13, 2018) ..............................15

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ..............................................................................................19

*Perez v. Bruister*,
    823 F.3d 250 (5th Cir. 2016) ...............................................................................30

*Perez v. First Bankers Trust Servs., Inc.*,
    No. 12-4450, 2017 WL 1232527 (D.N.J. Mar. 31, 2017) ...................................30

*Pfeifer v. Wawa, Inc.*,
    No. 16-497, 2018 WL 2057466 (E.D. Pa. May 1, 2018) .......................15, 26, 31

*In re Processed Egg Prod. Antitrust Litig.*,
    No. 08-MD-2002, 2016 WL 3584632 (E.D. Pa. June 30, 2016) .........................28

*In re Prudential Ins. Co of Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) .................................................................................29

*Reich v. Valley Nat. Bank of Arizona*,
    837 F. Supp. 1259 (S.D.N.Y. 1993) ...................................................................30

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015) .............................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001)................................................................29

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) .......................................................................14, 19

*Stanford v. Foamex L.P.*,
    263 F.R.D. 156 (E.D. Pa. 2009)........................................................................17

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) .............................................................................12

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) .............................................................................29

*Swain v. Wilmington Tr., N.A.*,
    No. CV 17-71-RGA-MPT, 2018 WL 934598 (D. Del. Feb. 16,
    2018) ...................................................................................................................3

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...........................................................................................13

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .......................................................................22, 27

*In re Wilmington Tr. Sec. Litig.*,
    No. 10-CV-0990-ER, 2018 WL 6046452 (D. Del. Nov. 19, 2018) .............27, 35

**Statutes**

ERISA § 409, 29 U.S.C. § 1109 .................................................................................19

ERISA § 409(a), 29 U.S.C. § 1109(a) ........................................................................15

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)....................................................15, 17, 19

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)................................................................2

Internal Revenue Code Section 468B .......................................................................7

**Rules**

Fed. R. Civ. P. 23 ...............................................................................12, 19, 21

Fed. R. Civ. P. 23(a) .................................................................................12, 17

Fed. R. Civ. P. 23(a)(1) ...................................................................................12

Fed. R. Civ. P. 23(a)(2) ...................................................................................13

Fed. R. Civ. P. 23(a)(3) ...................................................................................14

Fed. R. Civ. P. 23(a)(4) .............................................................................16, 17

Fed. R. Civ. P. 23(b) .................................................................................12, 17

Fed. R. Civ. P. 23(b)(1) ..........................................................................17, 19, 35

Fed. R. Civ. P. 23(b)(1)(A) .......................................................................17, 18

Fed. R. Civ. P. 23(b)(1)(B) ...............................................................................19

Fed. R. Civ. P. 23(c) ........................................................................................35

Fed. R. Civ. P. 23(c)(2)(A) ...............................................................................35

Fed. R. Civ. P. 23(e)..........................................................................20, 21, 22, 36

Fed. R. Civ. P. 23(e)(1) ............................................................................21, 35, 36

Fed. R. Civ. P. 23(e)(2) ............................................................................20, 21, 22

Fed. R. Civ. P. 23(e)(2)(B) ...............................................................................23

Fed. R. Civ. P. 23(e)(2)(C)(i) .....................................................................23, 26, 28

Fed. R. Civ. P. 23(e)(2)(C)(ii)....................................................................28, 33

Fed. R. Civ. P. 23(e)(2)(C)(iii) ..................................................................28, 34

Fed. R. Civ. P. 23(e)(2)(C)(iv)..........................................................................28

Fed. R. Civ. P. 23(e)(2)(D) ...............................................................................34

Fed. R. Civ. P. 23(e)(3) ........................................................................................22

Fed. R. Civ. P. 23(g) .............................................................................................17

Plaintiff Kristina Fink, Individually and as Class Representative, hereby moves for an order preliminarily approving a class action settlement agreement between Plaintiff and Defendant Wilmington Trust, N.A. ("Wilmington Trust"), Michael Smith, Andrew Smith and Frank Mennella ("Individual Defendants") (collectively, "Defendants"), certifying a Class for settlement purposes only, approving notice to the Class, and setting a date for a Fairness Hearing.[1]

## I.    INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.,* ("ERISA") class action for a payment of $5,500,000.00 – an average recovery of over $25,000 per Class member. Should the Court grant final approval, every eligible Class Member will receive their portion of the Net Proceeds according to a Plan of Allocation.

The proposed Settlement Class meets all of the criteria for conditional certification and the Settlement Agreement ("Settlement") satisfies all of the criteria for preliminary approval, providing an excellent result for the Class. For these reasons, discussed in more detail below, Plaintiff requests that the Court grant this unopposed motion.

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Background

This class action is brought on behalf of participants and beneficiaries of the

Nation Safe Drivers Employee Stock Ownership Plan ("Plan" or "NSD ESOP").

The Complaint alleges that Defendant Wilmington Trust, in its capacity as Trustee,

and the Individual Defendants violated ERISA in connection with the purchase of

shares of Nation Safe Drivers ("NSD") common stock by the Plan in 2014 (the

"ESOP Transaction"). Complaint, ECF No. 1 ¶ 5. In Counts I and II of the

Complaint, the Named Plaintiff asserted that Wilmington Trust violated ERISA in

connection with the ESOP Transaction by, *inter alia*, paying more than fair market

value for the stock of the Company. *Id.* at ¶¶ 78-98. In Count III, the Named

Plaintiff alleged that agreements by the Company to indemnify Wilmington Trust

violated ERISA. *Id.* at ¶¶ 99-106.  In Count IV, the Named Plaintiff asserted that

the Individual Defendants engaged in prohibited transactions pursuant to ERISA §

502(a)(3), 29 U.S.C. § 1132(a)(3). *Id.* at ¶¶ 107-115.

Wilmington Trust and the Individual Defendants deny these allegations,

deny any wrongdoing or liability, and have defended themselves in this Action.

Defendants do not admit wrongdoing of any kind regarding the ESOP Transaction

or this Action.

On July 20, 2020, Wilmington Trust filed a Third-Party Complaint against

Third-Party Defendants, Stout Risius Ross, Inc. and Stout Risius Ross, LCC (collectively "Stout"). Wilmington Trust is entering into a separate settlement with Stout.

**B.     Discovery**

The Parties have completed informal discovery. Plaintiff's counsel received and reviewed documents produced by Wilmington Trust and NSD. Declaration of Daniel Feinberg ("Feinberg Decl.") ¶¶ 9-10; Declaration of Gregory Porter ("Porter Decl.") ¶¶ 15-16. Class counsel has conducted extensive litigation against Wilmington Trust in the past, *see Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763 (4th Cir. 2019); *Guidry v. Wilmington Tr.*, 333 F.R.D. 324, 327 (D. Del. 2019); *Swain v. Wilmington Tr., N.A.*, No. CV 17-71-RGA-MPT, 2018 WL 934598 (D. Del. Feb. 16, 2018); *Brown on behalf of Henny Penny Corp. Emp. Stock Ownership Plan v. Wilmington Tr.*, N.A., No. 3:17-CV-250, 2018 WL 3546186 (S.D. Ohio July 24, 2018), and are thus very familiar with its work product and record-keeping. Feinberg Decl. ¶ 19; Porter Decl. ¶ 13. Similarly, Defendants are very familiar with the documents Plaintiff needs in order to evaluate her claims and Defendants provided that documentation to Class Counsel's satisfaction including transaction documents, valuation reports, due diligence meeting notes, fiduciary committee minutes, the Confidential Information Memorandum, and financial projections. Feinberg Decl. ¶ 10; Porter Decl. ¶ 16. Plaintiff's counsel also retained

and consulted a valuation expert who prepared a preliminary report and analysis regarding the ESOP Transaction valuation. Feinberg Decl. ¶ 11; Porter Decl. ¶ 17. The Parties agreed to settlement terms after extensive arm's-length negotiations. Feinberg Decl. ¶ 12; Porter Decl. ¶ 18. The settlement agreement resolves the Named Plaintiff's and the Settlement Class's claims against Defendants, subject to the Court's approval of the settlement. Feinberg Decl. Exhibit A (Settlement Agreement).

### C.    Motion Practice

On June 25, 2019, Ms. Fink filed the Complaint, ECF No. 1. On September 6, 2019, the Individual Defendants moved to dismiss for lack of personal jurisdiction or in the alternative to transfer venue to the Southern District of Florida. ECF. No. 12. Wilmington Trust moved that its response to Plaintiff's Complaint be deferred until fourteen days after the Court ruled on the Individual Defendants' motion to dismiss. ECF No. 13. The Court granted Wilmington Trust's motion for extension of time on October 30, 2019. ECF. No. 24. On July 21, 2020, the Court denied the Individual Defendants' motion to dismiss or change venue. ECF No. 30.

### D.    The Parties' Settlement Efforts

From September through December 2020, the Parties, through their counsel, participated in arm's length and good faith settlement discussions. Feinberg Decl.

¶ 12; Porter Decl. ¶ 18. The Parties vigorously engaged in the negotiation process, during which the two sides debated the merits of Plaintiff's claims and exchanged multiple offers and counter-offers. *Id.* The Parties ultimately executed the Settlement Agreement currently before the Court for preliminary approval on May 28, 2021. Ex. A.

### III.   SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement are summarized below.

### A.   The Proposed Settlement Class

The proposed Settlement Class consists of all participants in the Nation Safe Drivers Employee Stock Ownership Plan during the Class Period, and the beneficiaries of such participants. Ex. A § 1.41. The proposed Class excludes shareholders who sold the stock of NSD Holdings, Inc. or its predecessor(s) ("NSD") to the Plan in September 2014, and their immediate families; the directors of NSD during the Class Period and their immediate families; and legal representatives, successors, and assigns of any such excluded persons. *Id*. The Class Period begins on August 1, 2014 and ends on September 30, 2019. *Id*. § 1.6. Based on the ESOP's most recent Form 5500 and information from NSD, there are approximately 297 Class Members, with approximately 215 participants who had vested account balances during the Class Period and approximately 82 participants

who did not have vested account balances during the Class Period. Feinberg Decl. ¶ 14, Ex. C (2018 Form 5500).

## B.     Benefits to the Class

Defendants have agreed to pay $5,500,000 ("Settlement Amount") into a Settlement Fund Account established by Plaintiff's Counsel or the Settlement Administrator at a federally chartered financial institution (the "Financial Institution"), which shall be considered a common fund created as a result of the Action. Ex. A §§ 7.1.1; 7.1.2. This amount covers any and all claims for expenses and attorneys' fees by Plaintiff individually or on behalf of the Settlement Class and any service award to the Named Plaintiff, as well as any expenses associated with the Class Notices and Settlement Administration. *Id*. § 7.2. Plaintiff's Counsel will seek attorneys' fees of no more than one-third of the Settlement Amount, plus expenses. *Id*. § 10.1. The Settlement Amount, plus any interest thereon constitutes the "Gross Settlement Fund." *Id*. § 7.1.3.

Under the proposed Plan of Allocation, Class Members without vested account balances will receive $50.00 payments. Feinberg Decl. Ex. B. Class Members with vested account balances will receive the greater of $50.00 or their pro rata share of the remainder of the Net Settlement Fund less distributions to Class Members who receive the minimum $50.00 payment. *Id*. Before subtracting expenses and attorneys' fees, each of the 215 Settlement Class members with

vested account balances will receive over $25,000 on average. The Gross Settlement Fund is structured to qualify as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code. Ex. A § 7.1.4.

The Named Plaintiff and the Settlement Class are responsible for paying all taxes and tax-related expenses incurred in connection with the taxation of the income of the Qualified Settlement Fund and shall be paid out of the Qualified Settlement Fund. Ex. A § 7.1.4.

### C.    Notice and Administration

The proposed Settlement Administrator, Simpluris, shall be responsible for (i) mailing the Class Notice to Class Members and (ii) posting the Class Notice on a website for the Settlement Class, which shall constitute Legal Notice. *Id*. § 2.3.3. Plaintiff's Counsel may direct the Financial Institution in writing to disburse from the Gross Settlement Fund (1) any taxes owed by the Gross Settlement Fund and (2) reasonable expenses of administering the Gross Settlement Fund in accordance with Section 8.1. *Id*. § 8.1.

The Settlement Administrator will determine the amounts allocable to each Class Member. *Id*. § 8.2.2. The net of disbursements called for in Sections 8.1, 8.2.2., and 10.3 of the Settlement Agreement ("Net Settlement Fund") will be distributed according to the Plan of Allocation. *Id*. §§ 8.2.2, 2.3.5. The Settlement Administrator will also process distribution and payment elections by former

participants in the Plan, implement the Plan of Allocation, make payments to former participants in the Plan, and provide the current trustee of the Plan with a spreadsheet reflecting each current participant's allocation from the Net Settlement Fund. *Id*.

Within thirty days of the entry of a Preliminary Approval Order, Defendants will deposit $150,000 into the Settlement Fund Account. *Id*. § 7.1.2. Ten (10) days after the Final Approval Order is entered (the "Effective Date of Settlement"), Defendants will deposit an additional $5,350,000 into the Settlement Fund Account, at which point, the total amount will collectively comprise the "Class Settlement Amount." *Id*.

After the Effective Date of Settlement, Plaintiff's Counsel will direct the Financial Institution to disburse money from the Gross Settlement Fund. *Id*. § 8.2.1. On or after the Effective Date of the Settlement, checks will be directly distributed by the Settlement Administrator out of the Net Settlement Fund to Class Members, unless the Class Member elects to rollover such amounts into an eligible retirement account. *Id*. § 8.2.2.

### D. Service Award to the Class Representative and Attorneys' Fees and Costs

Subject to Court approval, Class Counsel's fees, costs and expenses, and a Service Award to the Class Representative shall be paid from the Gross Settlement Fund. Ex. A § 10.1. Plaintiff shall petition the Court for a Service Award not to

exceed $10,000 for the Class Representative in recognition of her service to the Class. *Id*. § 10.3. Class Counsel will also petition the Court for an award of attorneys' fees and reimbursement of litigation expenses, including the cost and expense of the consulting valuation expert retained by Plaintiff's counsel, in an amount not to exceed $60,000. *Id*. § 10.1. The amount of the attorneys' fees requested shall not exceed one-third of the Class Settlement Amount or $1,833,333.33. *Id*. § 10.1.

### E.    Release of Claims

In exchange for payment of the Settlement Amount by Defendants and satisfaction of the conditions required by the Settlement Agreement, Plaintiff and the Settlement Class will release any claims which were or could have been asserted in the Lawsuit or that in any way arise out of the 2014 ESOP Transaction, the Complaint or Wilmington Trust's services as Trustee. *Id*. § 3.1(i)-(iv). The Released Claims are set forth in full in Article III of the Settlement Agreement. *Id*. §§ 3.1–3.5. The Released Claims do not include (1) any individual participant's or beneficiary's claim based only on errors unrelated to the allegations in the Complaint regarding that participant's salary, age, or years of service, or (2) any claims relating to the 2019 restructuring transactions, pursuant to which, among other things, the Company sold approximately 80% of its interest in NSD NewCo, Inc. *Id*. § 3.1. The covenant not to sue is set forth in Section 4.1. The Settlement is

subject to a written determination by the Independent Fiduciary that the terms in the Settlement Agreement are fair and reasonable to the Plan and its participants. *Id*. § 3.2.

### F.     Notice and Proposed Schedule of Events

The Settlement Agreement provides that the Parties will request that the Company provide the names and last known addresses of Settlement Class Members at least twenty-one (21) days prior to the deadline for mailing notice. *Id*. § 2.3.3.

The proposed Class Notice, Exhibit 1 to the Settlement Agreement, provides all the information necessary to inform Class Members about the nature of the Action, the terms of the Settlement, and the procedures for entering an appearance to be heard or to object to the Settlement. The Class Notice will be mailed by First Class mail. Class Counsel anticipate that Class Members' mailing information will be largely accurate, because many Class Members were recently employed by NSD and are participants in the Plan. For returned mail, the Settlement Administrator will engage in standardized processes to identify and locate Class Members. In addition, key court documents, including the operative Complaint, the Settlement Agreement, preliminary approval papers, Plaintiff's Motion for Award of Attorneys' Fees, and Plaintiff's Motion for Final Approval will be posted on the settlement website.

The Parties agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|-------|--------|
| CAFA Notice | Within 10 days after the Settlement Agreement is filed |
| Preliminary Approval Hearing | TBD |
| Settlement Administrator to receive Class list and Class contact information | At least 21 days prior to the deadline for mailing notice |
| Mail Settlement Notice | At least 90 days before the Fairness Hearing |
| Motions for final approval of settlement, award of attorneys' fees and expenses, service award for Named Plaintiff | No later than 45 days before the Fairness Hearing |
| Objections to the Settlement, notice of intention to appear at Fairness Hearing | Must be received by the Court on or before 21 days before the Fairness Hearing |
| Response to Objections and Settlement Administrator's Notice Declaration | No later than 7 days before the Fairness Hearing |
| Fairness Hearing | At least 90 days after mailing of Class Notice |

## IV.    ARGUMENT

### A.    The Court Should Certify the Settlement Class

As part of the Settlement, the Parties request that the Court certify that proposed Settlement Class, defined in Section III(A) above, for purposes of settlement only. "At the preliminary approval stage, a court may conditionally certify the class for purposes of providing notice, leaving the final certification decision for the subsequent fairness hearing." *In re Nat'l Football League Players'*

11

*Concussion Inj. Litig.*, 301 F.R.D. 191, 199–200 (E.D. Pa. 2014).

### 1.    The Proposed Settlement Class Meets the Requirements of Rule 23

Certification of a class is required where the plaintiff demonstrates the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. As in numerous other ERISA class actions, those requirements are easily met here.

### 2.    The Class Satisfies the Requirements of Rule 23(a)

Rule 23(a) requires Plaintiff to demonstrate (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party is typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

### a)    The Class is sufficiently numerous

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The Third Circuit has held that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). Based on the Plan's Form 5500 for 2018 and information provided by NSD, the Plan had approximately 215 participants with vested account balances and 82 unvested participants as of September 30, 2019. Feinberg Decl., ¶ 14 and

12

Ex. C at 2. The numerosity requirement is met.

### b)      There are common questions of law and fact

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Not all questions of law and fact must be common. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015). "[A] single [common] question" will satisfy Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Commonality exists if the plaintiff's claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.

Claims that a stock was improperly valued or sold at an incorrect price, such as those at issue here, satisfy the commonality requirement. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001), *as amended* (Oct. 16, 2001) (finding common questions of law and fact as to the sale of securities at the price offered on the central National Best Bid and Offer system without investigating other prices); *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (common issues exist where plaintiff alleged ESOP stock sold for less than fair market value).

Here, commonality is satisfied because Defendants' alleged violations of ERISA are the same for all Class Members. Defendants either did or did not

engage in prohibited transactions under ERISA. Thus, Defendants' actions and inaction with respect to the ESOP Transaction either resulted in, or did not result in, ERISA violations toward the whole class. Common issues in this case include: whether Wilmington Trust engaged in prohibited transactions under ERISA by permitting the Plan to purchase NSD stock and take a loan from NSD; whether Wilmington Trust took sufficient steps to determine the value of the NSD stock in connection with the ESOP Transaction; whether Wilmington Trust caused the Plan to pay more than fair market value for NSD stock; whether the Individual Defendants received more than fair market value for their NSD stock; and other questions contained in the Complaint.

### c)     The Class Representative is typical of the class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement ensures that "class representatives are sufficiently similar to the rest of the class — in terms of their legal claims, factual circumstances, and stake in the litigation — so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). The Third Circuit has emphasized that this analysis sets a "'low threshold' for typicality." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016).

By definition a prohibited transaction claim brought under ERISA Sections 409(a), 502(a)(2) is brought on behalf of the plan and any recovery must be paid "to such plan." 29 U.S.C. §§ 1109(a), 1132(a)(2). Thus, courts generally find that ERISA cases arising under § 502(a)(2) meet the typicality requirement because the "action is brought on behalf of the Plan," and Plaintiff's claims, "of necessity, are typical of the claims" of class members. *Lively v. Dynegy, Inc.*, No. 05-00063, 2007 WL 685861, at *10 (S.D. Ill. Mar. 2, 2007).

Here, the Plaintiff was a participant in the ESOP during the relevant time period. *See* Declaration of Kristina Fink ("Fink Decl.") ¶ 3. The Plan's primary asset was the NSD stock it purchased during the relevant time period. In *Neil v. Zell*, an ERISA case arising from ESOP transactions, the court held that the named plaintiffs satisfied the typicality requirement because they "held the same investment as did all other members of the . . . ESOP" — employer stock. 275 F.R.D. 256, 261 (N.D. Ill. 2011); *see also Nistra v. Reliance Trust Co.*, No. 16 C 4773, 2018 WL 835341, at *3 (N.D. Ill. Feb. 13, 2018); *Pfeifer v. Wawa, Inc.*, No. 16-497, 2018 WL 2057466, at *4 (E.D. Pa. May 1, 2018). In addition, the damages sought here are losses and other relief on behalf of the Plan as a whole. Thus, typicality is met.

> ### d) The proposed Class Representative and her counsel have and will fairly and adequately protect the interests of the Class

Rule 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. The Third Circuit has recognized that this inquiry serves two purposes: "to determine [1] that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, . . . and [2] that there is no conflict between the individual's claims and those asserted on behalf of the class." *Larson v. AT & T Mobility LLC*, 687 F.3d 109, 132 (3d Cir. 2012) (alterations in original). These requirements are met here.

Proposed Class Representative Fink has been actively engaged in the litigation, has provided documents to counsel used to draft the Complaint, and was actively involved in settlement negotiations. Fink Decl. ¶ 5. Second, she has no conflicts with the Class. She asserts claims on the Plan's behalf and requests no separate individual relief. The adequacy requirement of Rule 23(a)(4) is met.

Plaintiff's counsel in this case is well-qualified as described in detail in the Declaration of Daniel Feinberg. Feinberg Decl. ¶¶ 2-7; Porter Decl. ¶¶ 7-12, Ex. A. Not only do these attorneys have extensive experience litigating class actions, including numerous ESOP class actions, they have worked diligently to litigate the

claims here. Feinberg Decl. ¶¶ 8-12; Porter Decl. ¶¶ 14-18. There should be no question that counsel have brought sufficient skill and resources to litigate this case. Plaintiff's counsel satisfy Rule 23(a)(4) and 23(g).

### 3. The Requirements for Certification Under Rule 23(b)(1) Are Met

In addition to meeting the requirements of Rule 23(a), the action must meet at least one of the three provisions of Rule 23(b). The claims asserted here meet the requirements of Rule 23(b)(1).

"Most ERISA class actions are certified under Rule 23(b)(1)." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008). "[T]he unique and representative nature of an ERISA § 502(a)(2) suit" makes such claims particularly appropriate. *Stanford v. Foamex L.P.*, 263 F.R.D. 156 (E.D. Pa. 2009). ERISA actions meet the requirements of Rule 23(b)(1) because "defendants often provide 'unitary treatment to all members of [a] putative class' and "the rights of absent 'class member[s] [are often] . . . implicated by litigation brought by other class members.'" *Feret v. Corestates Fin. Corp.*, C.A. No. 97–6759, 1998 WL 512933, at *13 (E.D. Pa. Aug. 18, 1998).

### a) Class certification under Rule 23(b)(1)(A) is appropriate

Rule 23(b)(1)(A) provides that a class may be certified if prosecuting separate actions would create a risk of inconsistent adjudications that would

establish incompatible standards of conduct for the party opposing the class. "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (certifying a class of "employees, spouses of employees, and dependents of employees" who were eligible for certain benefits). For this reason, courts have certified cases involving violations of ERISA under Rule 23(b)(1)(A). *See Neil*, 275 F.R.D. at 267-68; *Knight v. Lavine*, No. 12-611, 2013 WL 427880, at \*4 (E.D. Va. Feb. 4, 2013); *Loc. 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc.*, No. 15-CV-1019 (JCH), 2018 WL 1419792, at \*10 (D. Conn. Mar. 21, 2018) ("ERISA generally establishes fiduciary obligations on a plan-wide basis, which is the very reason that courts often certify ERISA classes under 23(b)(1)").

The risk of inconsistent adjudications is apparent in this case. For example, the central issue in this case is whether the Plan acquired NSD stock at an appropriate value and the steps that Wilmington Trust and its advisors undertook to determine that value. Separate lawsuits over these issues could result in different outcomes. Inconsistent adjudications on the true fair market value of NSD stock at the time of the 2014 Transaction obtained by similarly situated participants would make it impossible for the Plan administrator to treat similarly situated participants alike. Accordingly, certification under Rule 23(b)(1)(A) is appropriate.

### b) Class certification under Rule 23(b)(1)(B) is appropriate

Certification under Rule 23(b)(1)(B) is appropriate where "*any* individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (emphasis added). One example of an action ideally suited for certification under Rule 23(b)(1) is "the adjudication of the rights of all participants in a fund in which the participants have common rights." *Id*. at 834 n.14. Rule 23(b)(1)(B) is designed for "an action which charges a breach of trust by a[ ] . . . trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendment. That precisely describes the claims here.

Claims involving a fiduciary's breach of ERISA's prohibited transaction rules must be brought in a representative capacity on behalf of the plan under § 502(a)(2) for relief under § 409. 29 U.S.C. §§ 1109, 1132(a)(2); *Schering Plough Corp.*, 589 F.3d at 594-95. Thus, courts recognize that ERISA cases are the classic examples of Rule 23(b)(1)(B) class actions. *See*, *e.g., Neil*, 275 F.R.D. at 267-68; *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006). This is particularly true for cases involving an ESOP. *See*, *e.g.*, *In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 466-67 (E.D. Pa. 2000) (certifying 23(b)(1) class).

The key issues in the case focus on Defendants' conduct — principally, whether and how they caused or participated in the complained of prohibited transactions, the adequacy of Wilmington Trust's investigation into the value of NSD stock, the information provided to Wilmington Trust and used in its valuations, and the conclusions drawn from that information. Thus, a judgment that Defendants violated ERISA would apply to the Plan as a whole and impact all class members equally. Further, any money recovered would be paid to the Plan, meaning that resolution of these issues will affect *all* participants in the Plan.

**B.     The Court Should Grant Preliminary Approval of the Settlement Because it is Fair, Reasonable and Adequate**

**1.     The Standards for Preliminary Approval**

Rule 23(e) provides that a class action cannot be settled without court approval. Ultimately, to approve the proposed settlement, the Court must determine that it is fair, reasonable and adequate. *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017).

Review of a proposed class action settlement for approval generally proceeds in two stages: (1) preliminary approval and notice to class members of the proposed settlement; and (2) final approval following a fairness hearing in which the Court determines whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). *See Myers v. Jani-King of Philadelphia, Inc.*, No. CV 09-1738, 2019 WL 2077719, at *2-*3 (E.D. Pa. May 10, 2019).

Before a court approves a proposed settlement, notice must be provided to the class. Fed. R. Civ. P. 23(e)(1). The parties must provide the court with information sufficient to enable the court to determine whether to give such notice of the proposal to the class. *Id.* The court examines the information provided by the parties against a number of factors to determine whether notice should be given to the class. *Id.*

Rule 23, as amended in 2018, provides direction to federal courts considering whether to grant preliminary approval of a class action settlement. Fed. R. Civ. P. 23(e), Committee Notes (when weighing preliminary approval, court should decide whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."). Rule 23(e)(2) provides that the Court should look to the following factors:

(A) the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including

21

timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019).

In tandem with Rule 23(e), courts within the Third Circuit evaluate class action settlements under the nine factors outlined in *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975), which require a court to consider: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534–35 (3d Cir. 2004) (citing *Girsh*). Many of these factors overlap with those of Rule 23(e)(2).

## 2. The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

"Whether a settlement arises from arm's length negotiations is a key factor in deciding whether to grant preliminary approval." *In re Nat'l Football League*

*Players' Concussion Inj. Litig.*, 301 F.R.D. at 198. *See also* Rule 23(e)(2)(B) (proposal was negotiated at arm's length); *In re CIGNA Corp. Sec. Litig.*, No. 02–8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (noting that a presumption of fairness exists where parties negotiate at arm's-length); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008) (stressing the importance of arm's-length negotiations").

Here, the Parties engaged in an ongoing exchange of documents and information. They vigorously debated the merits of Plaintiff's claims. Their negotiations spanned three months and were hard fought.  Feinberg Decl. ¶ 12; Porter Decl. ¶ 18. Plaintiff's counsel retained a valuation expert to review valuation reports and other transaction documents. Feinberg Decl. ¶ 11; Porter Decl. ¶ 17. The Parties began their settlement negotiations after completing their informal discovery and obtaining valuation reports. Feinberg Decl. ¶¶ 11-12; Porter Decl. ¶¶ 17-18. Thus, Plaintiff's counsel entered the negotiations with a thorough understanding of Defendants' arguments and defenses, and both sides engaged in hard bargaining during settlement negotiations. The proposed Settlement is the result of good faith, arm's-length negotiations by well-informed and experienced counsel. Rule 23(e)(2)(B), and the third *Girsh* factor are met.

### 3. The Complexity, Expense, and Likely Duration of the Litigation

Addressing the first *Girsh* factor, as well as Rule 23(e)(2)(C)(1), the Parties

had different views about Defendants' actions, their potential liability and the likely outcome of the litigation. Plaintiff's core allegations regarding the 2014 ESOP Transaction rested on facts that were strongly contested by Defendants, including the accuracy of NSD's projections, whether the valuation methods employed by Wilmington Trust's advisors were proper, and whether there were negative facts that were ignored by or not sufficiently investigated by Wilmington Trust during the due diligence and negotiation process, and the fair market value of NSD stock as of the transaction date.

Defendants vigorously denied all of the allegations, asserted affirmative defenses and otherwise defended its actions with respect to the Transaction. Defendants pointed to evidence, such as the 2018 Form 5500 documenting a subsequent investment in NSD by a third party private equity fund at a much higher valuation than the ESOP Transaction price, which, in its view, supported the conclusion that Defendants have no liability. Ex. C at 12. If the Action were to proceed, Plaintiff would have to overcome these and other defenses and arguments.

These fact intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day.

Trial would have required several attorneys from Class Counsel to conduct

24

discovery and prepare and argue motions for class certification, and possibly summary judgment. Class Counsel would have to expend substantial time and effort to engage in formal discovery, propound interrogatories and requests for documents, take depositions, prepare witnesses, as well as hours of briefing. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolution and causing more expense. Further, the estimated 215 Class Members with vested account balances will each receive on average approximately $25,000 before fees and expenses – an amount that far exceeds most other ERISA settlements on similar issues, as will be discussed below.

Thus, the proposed Settlement is an excellent result for the Class and discloses no grounds "to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class . . . ." *Du on behalf of Enteromedics, Inc. v. Blackford*, No. 17-CV-194, 2018 WL 4691046, at *5 (D. Del. Sept. 28, 2018) (quoting *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2008)).

### 4. The Stage of The Proceedings and the Amount of Discovery Completed

With regard to the third *Girsh* factor, as described in Section II(B) and (C) above, the Parties have completed informal discovery and litigated a motion to dismiss or change venue. Counsel for Plaintiff and Wilmington Trust have also litigated at least five other ESOP class actions in the last five years presenting

similar ERISA issues. *See supra* Section II(B). As such, Plaintiff's Counsel is intimately familiar with Wilmington Trust's recordkeeping and due diligence practices. Similarly, Wilmington Trust is familiar with the documents and information Plaintiff's counsel has repeatedly requested and which allowed the Parties to fully and fairly assess the allegations and strengths and weaknesses of their respective positions at an early stage, to the benefit of the Class. The Parties conducted substantial and necessary informal discovery and Class counsel hired an expert to assess the potential value of the Class's claims. *See Pfeifer*, 2018 WL 2057466 at \*7 (finding "substantial discovery" where documents related to the merits and the Class's potential recovery had been produced, and plaintiff had hired valuation experts). "Thus, the parties have conducted sufficient discovery to estimate the merit and value of the Plaintiffs' case against [Defendants] and reach a reasonable settlement." *Gates*, 248 F.R.D. at 444.

Having obtained the necessary information to assess the strengths and weaknesses of their respective positions and with best interests of the Plan in mind, the Parties reached an excellent settlement agreement.

### 5.    The Risks of Establishing Liability, Damages and Maintaining the   Class Action Through Trial

The fourth, fifth, and sixth *Girsh* factors, and Rule 23(e)(2)(C)(i) account for the risks of establishing liability, establishing damages, and maintaining certification throughout the trial. These factors "balance the likelihood of success

and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *In re Wilmington Tr. Sec. Litig.*, No. 10-CV-0990-ER, 2018 WL 6046452, at *5 (D. Del. Nov. 19, 2018) (quoting *In re Prudential Ins. Co of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)). As to the risks of establishing liability, this factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995). As to damages, this factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant Corp. Litig.*, 264 F.3d 201, 238–39 (3d Cir. 2001) (*quoting Gen. Motors*, 55 F.3d at 816). Finally, this factor takes into account the likelihood of maintaining a class certification if the action were to proceed to trial. *In re Warfarin*, 391 F.3d at 537.

Here the Plaintiff faced significant risks. As discussed above in Section IV(A)(3), the Parties had different views about the likely outcome of the litigation and the proper calculation of fair market value of NSD stock at the time of the 2014 ESOP Transaction.

Wilmington Trust contends that the Plan and its participants were not harmed at all. Plaintiff, on the other hand, argued that the Plan incurred significant financial loss through its overpayment for NSD shares. That core dispute had not

been resolved at the time the Parties reached their Settlement and the uncertainty put all Parties at great risk. Because these factual disputes placed the ultimate outcome of the litigation in doubt, all Parties faced substantial risk. The Parties, having litigated similar issues extensively in the past, were fully aware of these risks and the possible outcomes, and were able to reach a settlement early on in the process.

### 6.   The Ability of the Defendant to Withstand a Greater Judgment

The seventh *Girsh* factor regards the ability of the defendant to withstand a greater judgment. In Plaintiff's view, this factor is not a significant concern here. Nonetheless, the balance of other factors still supports approval of this Settlement. *See In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2016 WL 3584632, at *16 (E.D. Pa. June 30, 2016) ("Even if the Court were to presume that the defendants' resources far exceeded the settlement amount, in light of the balance of the other factors considered which indicate the fairness, reasonableness, and adequacy of the settlement, the ability of the defendants to pay more, does not weigh against approval of the settlement.").

### 7.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attended Risks of Litigation

The eighth and ninth *Girsh* factors and Rule 23(e)(2)(C)(i)-(iv) assess the range of reasonableness of the settlement fund in light of the best possible recovery

and the risks of litigation. These factors weigh "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, . . . compared with the amount of the proposed settlement." *Prudential*, 148 F.3d at 322.

As courts in this Circuit have noted, "in conducting the analysis, the court must guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011). Indeed, even recoveries representing a very small percentage of the defendant's maximum exposure, which this is not, may be found to be fair, adequate and reasonable. *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Considering the costs, risks and delay of trial and appeal, the immediate and certain recovery of $5.5 million outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take — including discovery, class certification, summary judgment briefing, trial and appeals — for any judgment to be reduced to actual payment to Plan participants.

In cases, such as this one, alleging that the trustee violated ERISA by

causing an employee stock ownership plan to pay too much for the stock of a privately held company, Plaintiff maintains that the measure of loss is the difference between what the plan paid for the stock and what the stock was worth at the time of the transaction. *See Perez v. Bruister*, 823 F.3d 250, 270-72 (5th Cir. 2016); *Chao v. Hall Holding Co, Inc.*, 285 F.3d 415, 423, 444 (6th Cir. 2002); *Perez v. First Bankers Trust Servs., Inc.*, No. 12-4450, 2017 WL 1232527, at *81 (D.N.J. Mar. 31, 2017); *Neil v. Zell*, 767 F. Supp. 2d 933, 944-45 (N.D. Ill., 2011); *Reich v. Valley Nat. Bank of Arizona*, 837 F. Supp. 1259, 1289 (S.D.N.Y. 1993).

Applying that theory, Plaintiff's valuation expert opined that the Plan paid approximately $12 to $15 million in excess of fair market value in the 2014 ESOP Transaction because, among other reasons, the transaction price included an improper control premium. Plaintiff's expert reached this opinion by making corrections to what he saw as errors in the report provided by Wilmington Trust's financial advisor in the transaction at issue. However, Plaintiff faced substantial challenges in litigation. The Company's 2018 Form 5500 documents a substantial investment in NSD by a third-party private equity fund at a much higher valuation than the price paid by the NSD ESOP in the 2014 ESOP Transaction, resulting in a $104 million dividend payment to participants. Ex. C at 12 (2018 Form 5500). Furthermore, the third-party private equity investment described in the 2018 Form 5500 implies a $650 million valuation of NSD, almost double the price paid by the

NSD ESOP in the 2014 ESOP Transaction. *Id*. at 12. Ultimately, these subsequent events made the outcome of further litigation uncertain at best. Certain recovery of $5.5 million – approximately 36% to 45% of the best possible potential recovery and an average of $25,000 per Settlement Class Member with a vested account balance before fees and expenses and a payment of $50.00 to Class Members who did not vest in the Plan – represents a good result for the Settlement Class.

This case is on the high end of the range of reasonableness that other courts found in the limited number of cases Plaintiff has been able to find where there was a specific comparison of settlement value with the "best possible recovery." Here, Settlement Class Members will receive approximately 36% to 45% of the "best possible recovery." In *Pfeifer v. Wawa, Inc.*, an ESOP case, the court concluded that a settlement representing between 25% (under one damages theory) and 50% (under the other damages theory) fell within the permissible range. No. 16-497, 2018 WL 4203880, at *9 (E.D. Pa. Aug. 31, 2018). In *McDonough v. Toys R Us, Inc.*, cited by *Pfeifer,* the court concluded that a settlement that represented approximately 24% of estimated actual damages was reasonable and it had "upheld far smaller settlements." 80 F. Supp. 3d 626, 646 (E.D. Pa. 2015). Likewise, in *Hochstadt v. Boston Sciences Corp.*, the parties settled for $8.2 million in a case that was estimated at the high end by the plaintiffs' counsel to be $160 million and more conservatively by the court to be $30 million. 708 F. Supp. 2d 95, 108–09

31

(D. Mass. 2010). And in *Mehling*, the court found that a settlement of 20% of the "best possible" recovery was comparable to other class settlements approved in that district. 248 F.R.D. 455, 462 (E.D. Pa. 2008); *see also In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. 08-CV-285, 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010) (approving settlement of $41.5 million where the damages would have been "substantial in light of the billions of dollars grossed from global sales").

Comparison to other ERISA class settlements also demonstrates the reasonableness of the amount obtained. Plaintiff estimates that there are approximately 215 Class Members with vested account balances. Thus, on average each Class Member with a vested account balance will receive over $25,000 before fees, costs and other settlement expenses are deducted, which is significantly greater than per class member recoveries in other ERISA cases:

| Case | Recovery | Per Class Member Avg. Gross Recovery |
|---|---|---|
| *Dennard v. Transamerica Corp.*, No. 15-cv-30 (N.D. Iowa) | $3,800,000 | $148.55 |
| *Main v. American Airlines, Inc.*, No. 16-cv-473 (N.D. Tex.) | $22,000,000 | $212.65 |
| *Moreno v. Deutsche Bank Am. Holding Corp.*, No. 15-cv-9936 (S.D.N.Y.) | $14,000,000 | $388.02 |
| *Richards-Donald v. Teachers Ins. and Annuity Ass'n of Am.*, No. 15-cv-8040 (S.D.N.Y.) | $5,000,000 | $189.09 |

| Case | Recovery | Per Class Member Avg. Gross Recovery |
|---|---|---|
| *Sims v. BB&T Corp.*, No. 15-cv-732 (M.D.N.C.) | $24,000,000 | $330.43 |
| *Urakhchin v. Allianz Asset Mgmt. of Am., LP,* No. 15-cv-1614 (C.D. Cal.) | $12,000,000 | $2,065.40 |
| *Velazquez v. Massachusetts Fin. Servs. Co.*, No. 17-cv-11249 (D. Mass.) | $6,875,000 | $2,291.67 |
| *Price v. Eaton Vance Corp.*, No. 18-cv-12098 (D. Mass.) | $3,450,000 | $1,326.92 |
| *Pease v. Jackson Nat'l Life Ins. Co.*, No. 17-cv-284 (W.D. Mich.) | $4,500,000 | $392.88 |
| *Schapker v. Waddell & Reed Fin. Inc.*, No. 17-cv-2365 (D. Kan.) | $4,875,000 | $1,064.41 |

As in *Vytorin Erisa Litigation*, the "benefit conferred by the Settlement in this case" is "substantial" and "represents a better option than little or no recovery at all." 2010 WL 547613, at *9. Given the potential defenses and uncertainty inherent in any dispute about business valuation and the attendant risk of recovering nothing for the Plan participants, Plaintiff believes the proposed Settlement represents an excellent value for the Class.

### 8. The Effectiveness of the Proposed Method of Distributing Relief to the Class

Rule 23(e)(2)(C)(ii) examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing any class member claims. Here, the Settlement Agreement contemplates NSD providing the

names and last known addresses of the Settlement Class Members. Ex. A, § 2.3.3.

The Settlement Administrator will use that information to make distributions to

former participants in accordance with the Plan of Allocation. Class Members will

have the option of receiving a check directly from the Settlement Administrator or

depositing their distribution via a "roll over" into an Individual Retirement

Account or qualified retirement plan. *Id*. § 8.2.2. No claim forms are required. This

method of distributing relief is both effective and efficient.

### 9.    The Terms of The Proposed Award of Attorneys' Fees

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys'

fees, including timing of payment. As described above in Section III(C), Plaintiff's

counsel will file an application seeking an award of attorneys' fees, not to exceed

one-third of the Settlement Fund, plus reimbursement of litigation expenses. *Id*. §

10.1.

### 10.    The Proposal Treats Class Members Equitably Relative to Each Other

Under Rule 23(e)(2)(D), the court must consider whether the proposal treats

class members equitably relative to each other. As noted in Section III(A) above,

allocations to Class Members are based on the proportion to the vested company

shares that he or she held in the Plan. *Id*. § 8.2.2.

The proposed Settlement provides substantial relief to the Class and has no

obvious deficiencies such as preferential treatment to a portion of the Class. *See*

*Mehling*, 246 F.R.D. at 473 fn. 3 (E.D. Pa. 2007) (granting preliminary approval to pension plan class action settlement allocating settlement payment on *pro rata* basis).

In sum, Plaintiff believes the proposed Settlement is a fair compromise of the Class's claims. Feinberg Decl. ¶ 15; Porter Decl. ¶ 13.

### C.   The Court Should Approve the Notice Plan and Schedule a Fairness Hearing

Pursuant to Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound by [a proposed settlement, voluntary dismissal, or compromise]." Additionally, Rule 23(c) gives the district court discretion as to "appropriate notice" for a class certified under Rule 23(b)(1) or (b)(2). Fed. R. Civ. P. 23(c)(2)(A). In order to satisfy due process concerns, notice to class members must "apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *4 (quoting *Prudential*, 148 F.3d at 327). "To meet this standard, notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors maybe heard." *Id*. at *3 (quotation omitted); *see also In re Baby Products Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) ("Generally speaking," notice is sufficient if it "enable[s] class members to make

informed decisions on whether they should take steps to protect their rights, including objecting to the settlement").

In addition, Rule 23(e) gives the district court discretion as to the manner of the notice. Fed. R. Civ. P. 23(e)(1). It is well-established that notice sent by first class mail to each member of the settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974).

As described in Section III(E) above, the Parties have agreed, subject to Court approval, to a notice plan, which calls for individual mailed notice to Class Members. The Notice, which is attached to the Settlement Agreement as Exhibit 1, will be sent by first-class U.S. mail to each Class Member at least 90 days prior to the Fairness Hearing. Because all Class Members have or had ESOP accounts, the NSD ESOP has last known addresses for them, at least as of the Class Period, and has their Social Security numbers, which can be used for an address update if Notices are returned as undeliverable. The proposed Notice describes in plain English: (i) the Settlement's terms and operations; (ii) the nature and extent of the released claims; (iii) the procedure and timing for objecting to the Settlement; (iv) the date and place for the Fairness Hearing; and (v) the payment election options and election methods for Class Members who are former participants. This notice and the manner in which it will be disseminated to Class Members satisfy Rule

23(e)(1) and Constitutional due process and should be approved by the Court. Plaintiff requests that the Court approve Simpluris as Settlement Administrator. As detailed in the in the Feinberg Declaration, Simpluris has extensive experience in the administration of settlements of this type. *See* Exhibit D to Feinberg Decl.

Finally, the Parties request that the Court schedule a Fairness Hearing on Plaintiff's motion for final approval of the Settlement and motion for an award of reasonable attorneys' fees and expenses, and service award to Plaintiff, as set forth in the proposed Preliminary Approval Order, Exhibit 2 to the Settlement Agreement. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Class Members to object, and considering final approval of the Settlement.

## V.    CONCLUSION

The proposed Settlement meets the standard for preliminary approval. Accordingly, Plaintiff respectfully requests that the Court issue an Order: (a) certifying the Class for settlement purposes and granting preliminary approval of the Settlement Agreement, attached hereto as Exhibit A; (b) approving the proposed Class Notice, Exhibit 1 to the Settlement Agreement; (c) approving Simpluris as the Settlement Administrator; (d) approving the Plan of Allocation; (e) setting a date for a Fairness Hearing.

## VI.   REQUEST AS TO HEARING

Plaintiff respectfully request that the Court decide this motion on the papers,

or, in the alternative, schedule a hearing by videoconference.

Dated: May 28, 2021

/s/ David Felice
David A. Felice (#4090)
BAILEY & GLASSER LLP
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, DE 19808
Telephone: (302) 504-6333
dfelice@baileyglasser.com

Gregory Y. Porter (pro hac vice)
Ryan T. Jenny (pro hac vice)
Patrick O. Muench (pro hac vice)
BAILEY & GLASSER LLP
1055 Thomas Jefferson St., NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
gporter@baileyglasser.com
rjenny@baileyglasser.com
pmuench@baileyglasser.com

Daniel Feinberg (pro hac vice)
FEINBERG, JACKSON, WORTHMAN &
WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
dan@feinbergjackson.com

Attorneys for Plaintiff