IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KRISTINA FINK, on behalf of the Nation Safe Drivers Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>WILMINGTON TRUST, N.A., ANDREW SMITH, MICHAEL SMITH, and FRANK MENNELLA,<br><br>    Defendants,<br><br>and<br><br>WILMINGTON TRUST, N.A.,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>STOUT RISIUS ROSS, INC. and STOUT RISIUS ROSS, LLC,<br><br>    Third-Party Defendants. | Civil Action No. 19-1193-CFC |

## **MEMORANDUM ORDER**

Pending before me are Plaintiff Kristina Fink's Motion for Final Approval of Settlement (D.I. 63) and Plaintiff's Motion for Attorneys' Fees (D.I. 66). These motions have been filed by Fink as an individual and class representative. D.I. 64

at 1. The parties have agreed to settle this class action for a payment of $5,500,000 into a common fund for the benefit of settlement class members. D.I. 64 at 1. Fink's attorneys argue that this payment will result in vested class members receiving $25,000 on average and non-vested class members receiving $50. D.I. 64 at 22. Fink's attorneys request a fee award of 30% of the recovery amount. D.I. 67 at 1. Thus, the actual vested class member recovery will only be, on average, $17,500. As I indicated at the hearing on September 15, 2021, I am willing to approve the proposed settlement agreement but have concerns regarding the requested attorneys' fees. Tr. of Sept. 15, 2021 Hr'g at 18:20–22.

Typically, my role is to adjudicate disputes. But, in a class action, the plaintiff often presents an unopposed motion for settlement. When the attorneys' fees are taken from the settlement fund, the defendant has little incentive to object. Class members also have little incentive to object, especially when recovery amounts are small. And, even when recovery amounts are more substantial, the class members may lack the knowledge or experience to lodge objections to the proposed attorneys' fees.

There are two primary methods for calculating attorneys' fees: the percentage of recovery method and the lodestar method. The Third Circuit generally suggests using the percentage of recovery method in cases involving a common fund, but it advises district courts to employ the lodestar method to cross-

check the reasonableness of the percentage of recovery requested. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998). Here, Fink's attorneys request 30% of the common fund for attorneys' fees. D.I. 67 at 1. Viewed in isolation, 30% seems high but not necessarily out of line with other awards in this circuit. But, when I cross-check this requested percentage with the lodestar method, I find the percentage to be unreasonably high.

At the time that the motion for attorneys' fees was filed, Fink's attorneys calculated their lodestar fees to be $423,690. D.I. 67 at 16. Thus, in requesting 30% of the fund, they request that I multiply their lodestar fees by 3.9 to compensate them for the risks associated with taking this case and to account for the complexity of the case. D.I. 67 at 16. The attorneys explain that, in the Third Circuit, lodestar multipliers ranging from one to four are frequently awarded, so a multiplier of 3.9 is, in their view, reasonable. D.I. 67 at 16–17. But the Third Circuit has also "strongly suggest[ed] that a lodestar multiplier of 3 . . . is the appropriate ceiling for a fee award, although a lower multiplier may be applied in the District Court's discretion[]" when the case is "neither legally nor factually complex and [does] not require significant motion practice or discovery by [counsel]." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001). Even after the settlement hearing and additional briefing, I remain unconvinced that attorneys' fees comprising 30% of the recovery fund are reasonable.

3

The Third Circuit identifies 10 factors that may be relevant for district courts to consider when awarding fees:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; . . . (7) the awards in similar cases[;] . . . [8] the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; [9] the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and [10] any innovative terms of settlement . . . .

*In re AT&T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006) (internal quotation marks and citations omitted). But the Third Circuit advises that not every factor must be given the same weight. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005), *as amended* (Feb. 25, 2005). Here, Fink's attorneys focused on the following factors in briefing and at the settlement hearing: skill and efficiency of the attorneys, complexity and duration of the litigation, risk of nonpayment, and awards in similar cases. *See generally* D.I. 67. Thus, I too will give these factors the most weight.

### A. Skill and Efficiency of the Attorneys

Fink's attorneys argue that they "were able to successfully litigate this [ERISA] case because they are experts in this area of law," D.I. 67 at 7, and "were able to leverage their vast experience and expertise in ESOP litigation to achieve a

4

positive and meaningful benefit to the Class," D.I. 67 at 9. Although the lead attorneys have been litigating ERISA cases for numerous years,[1] they have very limited trial experience,[2] making me question the true extent of their litigation expertise. In any event, the skill and experience of the attorneys would be reflected in their hourly billing rates. Gregory Porter's billing rate is $850, and Dan Feinberg's billing rate is $975. D.I. 74 at 6. These rates are at the upper limit of what other courts have concluded were reasonable billing rates in ERISA actions. *See* D.I. 67 at 20–21. Thus, I conclude that these high hourly rates reflect Porter's and Feinberg's expertise and experience; and, given this conclusion, I find it hard to justify inflating an hourly rate by a multiplier based on the expertise and experience that the rates already assume. *See Blum v. Stenson*, 465 U.S. 886, 899 (1984) ("The quality of representation, however, generally is reflected in the reasonable hourly rate. It, therefore, may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was exceptional." (internal quotation marks and citations omitted)). The requested lodestar multiplier would be "double

---

[1] Gregory Porter since 1998 and Dan Feinberg since 1989. D.I. 74 at 6.
[2] Feinberg, the more experienced of Fink's attorneys, has tried only three cases. Tr. at 26:10–11.

5

counting" the skill and experience already presumedly factored into the hourly rate. *Id.*

### B. Complexity and Duration of the Litigation

Fink's attorneys argue that ERISA class actions are particularly complex. D.I. 67 at 9. I do not dispute that ERISA cases can be complex, but the attorneys offer no explanation for why this particular case was complex. Indeed, these attorneys have settled similar causes of action with Wilmington Trust at least twice before the present case, D.I. 74 at 8, and they were confident that they knew the topics for which Wilmington Trust would designate experts, Tr. at 19:10–21. Thus, although ERISA is a complex area of law, this specific case for these specific attorneys does not seem to warrant a lodestar multiplier of 3.9. *See In re Prudential*, 148 F.3d at 341 (vacating and remanding attorneys' fee order that used a 5.1 lodestar multiplier when "the speed and quality of the results achieved were attributable in no small part to the fact that many of class counsel had participated in [related] litigation in which they created what became . . . the baseline from which class counsel began their negotiations" in the subsequent litigation).

Further, as explained above, the attorneys' hourly rates used in the lodestar fee calculation reflect the complexity of litigating ERISA cases. The attorneys argued at the settlement hearing that they were able to efficiently litigate this case because they are "highly skilled and [know] how to get to the heart of the matter."

6

Tr. at 21:14–22:1. But the Supreme Court has advised that, in cases "where the experience and special skill of the attorneys will require the expenditure of fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue[,]" "the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." *Blum*, 465 U.S. at 898. Thus, I would expect that the high hourly rates already account for the attorneys' ability to litigate efficiently.

Similarly, I would expect the lodestar fee calculation to account for the complexity of the case even before the multiplier. More complex cases tend to require more of an attorney's time. Thus, the complexity of this case should be captured by the number of recorded billable hours used for the lodestar fee calculation. Even if the hourly rate does not fully offset the low number of recorded billable hours, I am not convinced that the hours are so skewed as to justify a 3.9 multiplier. The parties settled the case in the early stages of litigation before any formal discovery had been conducted. Tr. at 19:4–9. Therefore, I would expect the calculated lodestar fee to already account for complexity and duration of litigation. And, even if the calculated fee were lower than deserved, the attorneys have not justified the requested multiplier.

## C. Risk of Nonpayment

The attorneys argue that they assume the risk of nonpayment when they take cases on contingency. D.I. 67 at 11. Recognizing that, in the abstract, this statement is accurate, I am skeptical that there was a serious risk of nonpayment in this case given that these attorneys had settled at least two other cases with Wilmington Trust involving similar causes of action (ESOP overpaying for stock). D.I. 74 at 4–5. The attorneys are correct that success in litigation is never guaranteed and that trials are unpredictable. D.I. 67 at 11. But the attorneys were familiar with Wilmington Trust and Wilmington Trust's settlement practices. *See* Tr. at 8:20–25 ("My co-counsel and I have done five or six cases where Wilmington Trust was ESOP trustee and they used the same valuation advisor for the transaction that they used here, Stout Ross. And based on our past experience, we knew some of the problem areas that we've seen in the past and we definitely focused on those."). Although there was certainly a risk that Fink could lose at trial, Fink's attorneys were armed with an understanding of how Wilmington Trust approaches ESOP litigation and settlement. Thus, the risk of absolute nonpayment seems lower than it might be in other cases.

## D. Awards in Similar Cases

Fink's attorneys have submitted additional briefing explaining how the requested fee in this case compares to requested fees in other cases. *See generally*

8

D.I. 74. Of the cases cited in that briefing, *Swain v. Wilmington Trust, N.A.*, No. 17-cv-71 (D. Del.) is the most similar with this case. In *Swain*, the plaintiff alleged that Defendant overpaid for its ESOP purchase of stock, and the case settled before discovery was complete and before class certification for a payment of $5,000,000. D.I. 74 at 4. Although the plaintiff attorneys in *Swain* were awarded 33% of the recovery amount as attorneys' fees, the lodestar multiplier was only 1.7. Thus, although the requested fee here is the same as it was in *Swain*, the lodestar multiplier here is over twice the multiplier used in *Swain*. The difference in multipliers supports my sense that Fink's attorneys were able to leverage their familiarity with Wilmington Trust to settle this subsequent case with less work. The *Swain* case thus suggests that a lodestar multiplier closer to 1.7 is more appropriate than a multiplier of 3.9.

### E. Other Factors

The remaining factors cited by the Third Circuit in *AT&T*, 455 F.3d at 165, do not significantly influence my decision. Regarding the size of the fund and number of beneficiaries, Fink's attorneys state that they were able to secure 36.6% of the maximum possible recovery as the settlement amount. D.I. 74 at 8. This percentage is in line with other percentages of maximum possible recovery that the attorneys were able to secure in other ESOP cases. D.I. 74 at 8. Thus, this recovery does not seem so exceptional as to warrant a lodestar multiplier of 3.9.

Regarding objections by class members, the attorneys note that there are no objections, D.I. 67 at 6, but, as mentioned before, the incentive for a class member to object is often low. Thus, the lack of objections alone does not justify the requested fees.

Regarding the amount of time spent by Fink's attorneys, the attorneys argue that they invested approximately 600 hours into the case, demonstrating a significant commitment to the litigation. D.I. 67 at 12. Although the attorneys should certainly be compensated for the hours they devoted to the litigation, the time spent does not explain why they should be compensated for substantially more hours than they actually devoted to the case.

Regarding the value attributable to Fink's attorneys relative to efforts of other groups, there were no other groups involved, so there is no other effort from another group against which to compare Fink's attorneys' effort. Thus, this factor does not help me determine the reasonableness of the requested fee.

Regarding the fee that would have been negotiated had the case been subject to a private contingent fee agreement, I recognize that private contingency agreements often grant 30% of the recovered amount in attorneys' fees. But I decline to find that this factor outweighs the rest of my analysis, especially considering that the attorneys could not articulate the circumstances under which this class action representation was initiated. *See* Tr. at 40:2–6 ("I honestly don't

10

know [how my law firm got in touch with the named plaintiff]. I'm not sure if there was an advertisement put out or what the process was to bring her in.").

Finally, regarding any innovative terms of the settlement, Fink's attorneys state that the agreement allows class members to roll over their payments into an IRA but do not explain how this term is innovative. Thus, this factor does not change my calculus.

\* \* \* \*

Finding the requested attorneys' fees unreasonable, I am now forced to adjust the fees myself. Although I believe the attorneys should be compensated for more than just the calculated lodestar fee, Fink's attorneys have given me little more than conclusory statements to justify their requested multiplier of 3.9. Even after the supplemental briefing, I remain unconvinced that this case is special enough to warrant increasing the calculated fees by a multiplier of 3.9. Thus, I will base my fee determination on the fees granted in previous, similar cases. Based on the supplemental briefing, I conclude that *Swain v. Wilmington Trust, N.A.*, No. 17-cv-71 (D. Del.) is the most analogous to the case here. In *Swain*, the lodestar multiplier was 1.7. D.I. 74 at 8. The attorneys' lodestar fees as of the filing of the proposed settlement were $423,690. Thus, applying a multiplier of 1.7, I will approve attorneys' fees of $720,273.

11

NOW THEREFORE, at Wilmington this Nineteenth day of October in 2021, **IT IS HEREBY ORDERED** that Plaintiff's Unopposed Motion for Final Approval of Settlement (D.I. 63) and Plaintiff's Unopposed Motion for Attorneys' Fees, Litigation Expenses and Class Representative Service Award (D.I. 66) are **DENIED** with leave to file amended motions consistent with this Memorandum Order.

_____
CHIEF JUDGE